**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **CRIMINAL ACTION** |
| | : | |
| | : | |
| v. | : | **NO. 05-162** |
| | : | |
| **JAMES HOGELAND** | : | |
| | : | |
| | : | |

Diamond, J.                                                                                    October 12, 2006

**MEMORANDUM**

On September 12, 2006, James Hogeland pled guilty to weapons and drug-related charges.  Hogeland conditioned his plea on his right to appeal my rulings denying his motion to suppress physical evidence and granting the prosecution's motion *in limine* to allow the limited use of his proffer statements.  See United States v. Zudick, 523 F. 2d 848, 851 (3d Cir. 1975) (approving conditional guilty pleas).  I have elsewhere explained my ruling on Defendant's suppression motion.  *See May 31, 2006 Order*. I write here to explain my rulings on the motion *in limine*.

**FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

As I described more fully in my May 31, 2006 Order, in May 2004 Philadelphia Police learned from a Confidential Informant that crystal methamphetamine was being shipped by UPS from Phoenix, Arizona to a white male using the alias "John Spence" at 6532 Torresdale

1

Avenue, Philadelphia.  After obtaining a search warrant (whose adequacy Hogeland did not

challenge), the Police opened the suspect package and found four plastic bags containing crystal

methamphetamine.  *See May 31, 2006 Order at 1.*

After obtaining a search warrant for the Torresdale Avenue address, a police officer

posing as a UPS driver delivered the package to Defendant, who identified himself as John

Spence.  Police then searched the first floor of Hogeland's home and – after securing a third

warrant – searched the second floor as well.

Police recovered the following items during their searches: over 450 grams of

methamphetamine; 8 bottles of ephedrine; 175 grams of powder ephedrine; a small amount of

marijuana; numerous knives and swords; components for making a pipe bomb; an improvised

explosive device; a claymore mine; a cannon; and nineteen firearms, including a pistol, a

revolver, eleven rifles, and four shotguns.

On March 22, 2005 the grand jury returned an eight-count indictment against Defendant,

charging him with possession with intent to distribute more than 50 grams of methamphetamine;

possession of a firearm in furtherance of a drug trafficking crime; being a felon in possession of a

firearm; possession of an unregistered firearm; and possession of a firearm with an obliterated

serial number.  21 U.S.C. §841(a); 18 U.S.C. §924(c)(1); 18 U.S.C. 922(g)(1); 18 U.S.C. §§

5845(a), 5861(d), 5871; 18 U.S.C. §§ 922(k), 924(a)(1)(B).

Hogeland then indicated that he might wish to plead guilty and cooperate with the

Government's investigation.  The prosecution provided Hogeland and his counsel with its

standard "proffer letter," setting out the terms and conditions governing discussions with

Defendant.  The proffer letter, addressed to Defendant's counsel, included three key provisions:

2

(1) no statements made by Defendant or his counsel "will be used directly against your client in any criminal case"; (2) the Government was free to "make derivative use of, and pursue investigative leads suggested by, statements made or information provided by you or your client"; and (3) the following paragraph, which subsequently became the focus of the Government's motion *in limine*:

> Third, if your client is a witness or party at any trial or other legal proceedings and testifies or makes representations through counsel materially different from statements made or information provided during the "off-the-record" proffer, the government may cross-examine your client, introduce rebuttal evidence and make representations based on statements made or information provided during the "off-the-record" proffer. This provision helps to assure that your client does not abuse the opportunity for an "off-the-record" proffer, make materially false statements to a government agency, commit perjury or offer false evidence at trial or other legal proceedings.

*Government's Motion in Limine to Admit Statements of Defendant Proffered to the Government, Exhibit A.*

Hogeland and his counsel signed the letter on February 3, 2006, and met with the Government that day and again on February 24, 2006.  During those proffer sessions,  Defendant made numerous inculpatory statements: he admitted that he owned the drugs, firearms, and improvised explosive devices found inside the house; he admitted that he was selling illegal narcotics; and he discussed the source of his narcotics supply.  *Id., at 4.*

After these proffer sessions, Defendant decided not to plead guilty and announced his intention to go to trial.  The Government moved *in limine*: (1) to admit pursuant to Federal Rules of Evidence 404(b) and 609 Hogeland's prior drug-dealing conviction; and (2) to enforce the terms of the proffer agreement, asking me to admit Defendant's proffer statements in rebuttal if he contradicted those statements in his own testimony, cross-examination of prosecution

witnesses, or argument of counsel.  I concluded that the prejudice created by admitting

Hogeland's prior conviction would outweigh its probative value, and so denied the

Government's motion.  *N.T. of September 5, 2006 at 3.*

Significantly, Hogeland did not oppose the Government's use of his proffers to rebut any

inconsistent testimony Hogeland himself or other defense witnesses might offer at trial.

*Defendant's Response at 3.*  Rather, in his written response to the Government's motion,

Defendant made the following limited objection:

> With respect to statements elicited through cross-examination, the defendant
> strenuously objects, as such use of proffered information practically strips the
> defendant of his right to a fair trial.

*Id.*  At oral argument, Hogeland expanded his objection, indicating that in addition to cross-

examining the Government's witnesses in a manner inconsistent with his proffers, he wanted to

argue to the jury that he did not know what was in the UPS package when he signed for it, and

possibly argue that he was unaware of the weapons in his own home.  *N.T. of September 12,*

*2006 at* 3.  I overruled these objections and allowed the Government's use of the proffers to rebut

counsel's arguments or cross-examination that were inconsistent with the proffers.  *N.T. of*

*September 5, 2006 at 3; N.T. of September 12, 2006 at 4.*  When Hogeland indicated that my

ruling denied him the right to present a defense, I twice quoted the Ninth Circuit's observation in

Rebbe that

> the defendant had available to him a range of possible arguments and defenses at trial
> that could have been used without triggering the proffer's admission.  For instance,
> the defendant was free to challenge the sufficiency of the Government's evidence,
> call into question the credibility of the Government's witnesses, question
> Government witnesses about their knowledge and qualifications, challenge
> inconsistencies in the Government's evidence and ask Government witnesses about

4

their motives for testifying against the defendant.

*N.T. of September 5, 2006 at 3 (quoting United States v. Rebbe, 314 F.3d 402 (9ᵗʰ Cir. 2002).*
Accordingly, I concluded that although my ruling undoubtedly discouraged Hogeland from
contradicting his proffers, it still allowed Hogeland to present a vigorous defense.


## DISCUSSION

### A. Legal Standard

Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f) provide that
inculpatory statements made during plea discussions that do not result in a guilty plea ordinarily
are not admissible at trial.    Courts have uniformly held, however, that proffer statements such as
Hogeland's are admissible.  The Supreme Court has set out the rationale underlying these
decisions, allowing the Government to impeach a defendant whose trial testimony contradicted
his proffer statements:

> Because the plea-statement Rules were enacted against a background presumption that legal
> rights generally, and evidentiary provisions specifically, are subject to waiver by voluntary
> agreement of the parties ... [knowing and voluntary] agreements to waive evidentiary rules
> are generally enforceable even over a party's subsequent objections.

United States v. Mezzanatto, 513 U.S. 196, 202-03 (internal citations omitted).

The Third Circuit has yet to address the Government's rebuttal use of proffer statements.
Every other Court to address the practice, however, has upheld it.  E.g., United States v. Velez, 354
F. 2d 190 (2d Cir. 2004); United States v. Rebbe, 314 F.3d 402 (9th Cir. 2002);  United States v.
Krilich, 159 F.3d 1020 (7ᵗʰ Cir. 1998); United States v. Burch, 156 F. 3d 1315 (D.C. Cir. 1998);
United States v. Ford, 2005 U.S. Dist. LEXIS 8917 (D. NJ. 2005); United States v. Jasin, 215 F.

Supp. 2d 552 (E.D.Pa. 2002).  Several decisions are particularly instructive.

The Seventh Circuit has held that the Government appropriately used proffer statements to rebut inconsistent evidence presented through the testimony of the defendant or on cross-examination:

> Evidence is evidence, whether it comes out on direct or cross-examination.  One can "otherwise present" a position through arguments of counsel alone, so it is easy to see how a position can be 'presented' by evidence developed on cross-examination and elaborated by counsel.

United States v. Krilich, 159 F.3d 1020, 1025 (7th Cir. 1998).

Similarly, the Second Circuit considered a waiver of "exclusionary privilege in all circumstances in which the defense presents contradictory testimony, evidence, or arguments – whether or not the defendant himself testifies." United States v. Velez, 354 F. 2d 190, 194-5 (2d Cir. 2004).  The Court deemed the waiver enforceable, holding that a defendant who consents to such a broad waiver "has not forfeited his constitutional right to present a defense, to the effective assistance of his counsel, or to a fair trial." Id., at 196.  Rather (as I twice informed Hogeland in the instant case), the defendant retained the ability to present a "meaningful defense": he could still challenge the "credibility of the Government's witnesses and the weight and sufficiency of the Government's evidence." United States v. Gomez, 210 F. Supp. 2d 465, 476 (S.D.N.Y. 2002). See also United States v. Rebbe, 314 F.3d 402, 408 (9th Cir. 2002); United States v. Ford, 2005 U.S. Dist. LEXIS 8917 (D. NJ. 2005); United States v. Jasin, 215 F. Supp. 2d 552 (E.D.Pa. 2002).  Finally, the Velez Court observed that the defendant remains free to present evidence inconsistent with his proffer statements, with the "fair consequence" that the Government, as contemplated by the waiver agreement, may then offer the defendant's statements in rebuttal.  Velez, 354 F. 2d at 196.

6

In light of this persuasive, uniform authority, I concluded that if Hogeland contradicted his proffer statements – whether by his own testimony or through his counsel's arguments or representations – the Government could rebut with the proffers themselves. Hogeland has not even tried to distinguish his case from those I have discussed. His proffer letter appears substantially similar to the standard proffer letters detailed in those decisions. See, e.g., Jasin, 215 F. Supp. 2d at 586 (discussing "standard" proffer letter language). The letter explicitly provides that if Hogeland contradicted factual admissions of his proffers through testimony or representations of counsel, the Government would introduce the proffers themselves. *See Government's Motion in Limine, Exhibit A.*

Significantly, Hogeland nowhere suggests that the proffer letter was unclear, or that he did not understand that counsel's argument or cross-examination inconsistent with the proffers would result in the Government's rebuttal use of the proffers themselves. Rather, Hogeland believes that he cannot receive a fair trial unless he can cross-examine the Government's witnesses and argue to the jury in a manner suggesting that Hogeland did not know who "John Spence" was, did not know what was in the UPS package, and did not know of the drugs and guns in his own home. I did not prohibit Hogeland from presenting such a defense, however. Rather, as the Second Circuit observed, I simply allowed the "fair consequence" of the Government's rebutting the defense with the proffers. Velez, 354 F. 2d at 196.

In granting the Government's *motion in limine*, I thus held Hogeland to the terms of his written agreement with the Government – an agreement Hogeland and his lawyers signed and understood. The ruling Hogeland asked me to make – enforcing only parts of the agreement – would

have allowed Hogeland to contradict his proffers without allowing the Government an effective means of rebuttal.  Nothing in the Constitution gives Hogeland the right to abuse the proffer process.

BY THE COURT.

/s Paul S. Diamond, J.

_____

Date

_____

Paul S. Diamond, J.