# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA**

**V.**                                                    **CRIMINAL CASE NO: 05-162**

**JAMES HOGELAND**

## SUPPLEMANTAL MOTION FOR SENTENCE REDUCTION PURSUANT TO 3582(C)(1)(A)

Now comes, James Hogeland (Pro-se) requesting that the Court reduce his sentence to a term of less than 50 years imprisonment. In this motion, Mr. Hogeland presents with clarity, the arguments which he relies on for a sentence reduction.[1] Mr. Hogeland submits that his *COVID-19 Concerns, and his Extraordinary Rehabilitation and Exemplary Prison Record*, **when viewed in combination with** the *Harsh Prison Conditions, the Lengthy Sentence he Received For Exercising his Right to Trial, the Disparity Between Mr. Hogeland's Actual Sentence and Sentence he may Have Received if First Step Act Applied, and the Sentence Disparity that Exists Today*, extraordinary and compelling reasons exist to grant Mr. Hogeandl's motion for a sentence reduction – even to time served.[2]

Beyond the amount of time served, COVID-19 concerns, harsh prison conditions, trial penalty, the enhanced sentenced he received due to 851 penalties, and sentence disparity, it is Mr. Hogeland's *transformation* while in custody that makes his case extraordinary and compelling, and makes it clear that 50 years imprisonment is unnecessary at this point.

---

[1] *Certified Paralegal, Mr. Noel Delarosa, assisted Mr. Hogeland in preparing this motion.* [2] *Mr. Hogeland has served 17 years without adding Good Time Credit, and 20 years after adding Good Time Credit. Mr. Hogeland will turn 60 years old on Dec. 28. With Good Time Credit, Mr. Hogeland's release date is scheduled for 2/21/2047. Without Good Time Credit, his release date is scheduled for 2054. See: Ex A-1 (Computation Sheet). Note: Mr. Hogeland re-submits the same exhibits referenced in his first motion but in a different format along with new additional exhibits.*

## I.    Background:

On March 22, 2005, Mr. Hogeland was indicted in the Eastern District of Pennsylvania on Eight Counts: *Count One*; possessing methamphetamine with intent to distribute, 21 U.S.C. 841(a)(1); *Counts Two* and *Three*; possessing a firearm in furtherance of a drug trafficking crime, 18 U.S.C. 924(c); *Count Four*; possession of a firearm by a felon, 18 U.S.C. 922(g)(1); *Counts Five, Six* and *Seven*; possession of an unregistered firearm, 26 U.S.C. 5861(d) and *Count Eight*; possession of a firearm with an obliterated serial number, 18 U.S.C. 922(k).  On August 22, 2006, a superseding indictment was issued restating the charges and adding *Count One* – that Mr. Hogeland possessed 50 grams or more of methamphetamine (actual) with intent to distribute.

On September 12, 2006, Mr. Hogeland pled guilty to Counts One, Two and Four through Eight of the original indictment.  Before sentencing, the Court allowed Mr. Hogeland to withdraw his guilty plea in its entirety because the plea agreement was not sufficiently definite.  On October 25, 2007, after a three day trial by jury, Mr. Hogeland was found guilty on all Eight Counts of the *superseding indictment*.  On April 22, 2008, the Court imposed an aggregated mandatory minimum sentence of 600 months imprisonment.

On August 24, 2020, Mr. Hogeland submitted a BP-8 administrative remedy form requesting that the warden at FCI Fairton grant him compassionate release, along with his "motion to modify sentence pursuant to 18 U.S.C. 3582(C)(1)(A) to the Court.[3]  On September 1, 2020, the government filed its response arguing that Mr. Hogeland did not exhaust an administrative request for relief as required.  On September 10, 2020, Mr. Hogeland, submitted the same BP-8 form to the warden at FCI Fairton requesting compassionate release.  On October 15, 2020, Mr. Hogeland, re-submitted the same BP-8 form along with his "motion to modify sentence pursuant to 18 U.S.C. 3582(C)(1)(A) to the Court.  On November 9, 2020, the government responded to Mr. Hogeland's "motion to modify sentence pursuant to 18 U.S.C. 3582(C)(1)(A)."  Thereafter, the Court appointed counsel from the public defender's office to represent Mr. Hogeland on his sentence reduction motion.  On numerous occasions, Mr. Hogeland contacted his attorney Claudia Flores, from the public defender's office inquiring about his compassionate release motion.  Initially, attorney Flores advised Mr. Hogeland that he

---

[3]  *To avoid confusing the Court, Mr. Hogeland provides the Court with a copy of the BP-8 form and hand written "Motion to Modify Sentence Pursuant to 18 U.S.C. 3582(c)(1)(a).  See: Ex B-1*

should wait until the Third Circuit ruled in *Andrews* before supplementing his motion.[4] However, on June 6, 2021, during a jail recorded conversation, attorney Flores stated to Mr. Hogeland, "that it would be a waste of their time and resources to file a motion on his behalf." Attorney Flores, then advised Mr. Hogeland that "it might be in his best interest to continue pro-se." Today, Mr. Hogeland has decided to follow the advice of attorney Flores and proceed pro-se. Thus, Mr. Hogeland respectfully asks the Court to allow him to supplement his initial motion with this motion. Indeed, the Court will find that this motion along with his arguments are clear, easily understood, meritorious and deserving of further consideration.

## II.   Statement:

This case involves an individual (Mr. Hogeland) who has had a "poly-substance abuse history involving alcohol, marijuana, methamphetamine, LSD, and hallucinogenic mushrooms dating back approximately to his mid-teens." See: *PSR at 14*. Despite having a good employment record *Id. at 15*, Mr. Hogeland made some poor decisions which were influenced in part by his substance abuse issue. Aside from this offense, Mr. Hogeland has one prior drug conviction that involved no violence. *Id. at 10*. This offense, although it did not involve any violence, was a serious one. As the Court will recall, Mr. Hogeland initially accepted a plea agreement that "would have required a 20 year mandatory minimum term of imprisonment," but the deal fell apart, and the Court allowed Mr. Hogeland to withdraw his plea. See: *Gov't's Resp. at 2*. Importantly, Mr. Hogeland wanted to plead out and accept responsibility but only for what he felt he was responsible for. Indeed, at sentencing, Mr. Hogeland made clear that he was "sorry for everything that he has done," that he "did accept the package and I did sign it," and that he was "wrong and I know I did wrong and I'm not glossing over that." See: *Sent Trans. at 12-13*. Thus, Mr. Hogeland was contrite and remorseful at sentencing for his actions and he continues to feel that way today.

Notwithstanding the fact, that Mr. Hogeland was involved in a serious offense, the mandatory penalties sought by the government which led to a sentence that was beyond significant – indeed, it was "greater than necessary" was unnecessary. It is instances like that found in Mr. Hogeland's case, which caused Congress to pass the First Step Act, particularly, allowing defendants to file directly with the Courts for sentence reductions. Congress was aware that there were defendants who may have received *unusually lengthy* sentences based on penalties that Congress did not intend to be

---

[4]  *United States v. Andrews, No. 05-260-02 (E.D. Pa. Aug. 19, 2020) (Under review in the 3rd Circuit. Question presented, is whether 1B1.13 is applicable to motions file by defendants).*

abused by the government. Knowing this would be the case, Congress implemented 3582(C)(1)(A) as a safety valve and the mechanism to sort out *unusually lengthy* sentencing issues. In fact, Congress even went as far as to say that 3582(C)(1)(A) can be used to correct an *unusually lengthy* sentence if a defendant can demonstrate that his circumstances have changed in an extraordinary and compelling way while incarcerated. *Brooker*, 976 F.3d 228, 238 (2nd Circuit). Although the Court did not have the authority to sentence Mr. Hogeland under the mandatory minimum, the Court did "note for the record that this sentence is well in excess of what" the Court would have imposed if the Court "weren't bound by the statutory mandatory minimums . . ." See: *Sent Trans. at 16-17*. There is no doubt that the 600 months Mr. Hogeland received for his conduct, is an *unusually lengthy* sentence that the Court would not have imposed if it were not for the mandatory minimum statute, and when assessing Mr. Hogeland's circumstances in an individualized manner, it is clear, that Congress, in passing the First Step Act, actually hoped to correct sentences like Mr. Hogeland's, that are "greater than necessary." Mr. Hogeland submits that his circumstances call for a second look, and he is deserving of a sentence reduction – even to time served. Below, the Court will find that Mr. Hogeland's *COVID-19 Concerns, and his Extraordinary Rehabilitation and Exemplary Prison Record, **when viewed in combination with** the Harsh Prison Conditions, the Lengthy Sentence he Received For Exercising his Right to Trial, the Disparity Between Mr. Hogeland's Actual Sentence and the Sentence Disparity that Exist Today,* extraordinary and compelling reasons exist to grant Mr. Hogeland's motion for a sentence reduction – even to time served.

## III.    The Court has the Authority, Pursuant to 3582(C)(1)(A) to Reduce Mr. Hogeland's Sentence to a term less than 600 months Imprisonment.

The First Step Act amended 18 U.S.C. 3582(C)(1)(A) to give district courts the authority to reduce a previously imposed sentence in extraordinary and compelling circumstances. It provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that ---

i)      extraordinary and compelling reasons warrant such a reduction[.]

As the Court is aware, prior to the COVID-19 pandemic and in the wake of the Covid-19 pandemic, numerous district courts around the country including district courts within the Third Circuit have granted motions under 3582(C)(1)(A).

## IV.   1B1.13 of the Sentencing Guidelines as well as Application Note 1D does not apply to 3582(C)(1)(A) Motions brought by Defendants.

Several Courts of Appeals and the majority of district courts agree that 1B1.13 and Application Note 1D do not apply to 3582(C)(1)(A) motions brought by defendants. For instance, the Second Circuit Court of Appeals in *Brooker* determined that the provisions were inapplicable to such motions and applied only to motions brought by the BOP:

> In other words, if a compassionate release motion is not brought by the BOP Director, Guideline 1B1.13 does not, by its own terms, apply to it. Because Guideline 1B1.13 is not "applicable" to compassionate release motions by defendants, Application Note 1(D) cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling. 976 F.3d at 236.

For motions brought by inmates, the court ruled that "a district court's discretion in this area – as in all sentencing matters – is broad". *Id*. at 237. Further, the Second Circuit explained that what could be considered and relied on by a court considering a 3582(C)(1)(A) was virtually unlimited: "[t]he only statutory limit on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation...alone shall not be considered an extraordinary and compelling reason.'" *Id*. at 237-238. (quoting 3582(C)(1)(A)). A district court's broad discretion extends to reducing sentences that were unjust or unfair based on their length or a defendant's youth at the time of the offense, or both. *Id*. at 238. In doing so, the Second Circuit cited with approval *United States v. Maumau*, 2020 WL 806121 (D. Utah), a case in which the district court granted a reduction because the original sentence was overly long. *Id*.

The Fourth, Fifth, Sixth, Seventh, Ninth, and Tenth Circuits soon followed confirming that district courts have broad discretion when ruling on 3582(C)(1)(A) motions brought by defendants and they held that 1B1.13 of the Sentencing Guidelines is not an "applicable policy statement[]" within the meaning of 3582(C)(1)(A). See: *United States v. Jones*, F.3d, 2020 WL 6817488, at *9 (6th Cir. Nov. 20, 2020) ("in cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the 3582(C)(1)(A) inquiry and have full discretion to define "extraordinary and compelling" without consulting the policy statement 1B1.13."); *United States v.*

*Gunn*, F.3d, 2020 WL 6813995 at *2 (7th Cir. Nov. 20, 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners. In other words, the Sentencing Commission has not yet issued a policy statement "applicable" to Gunn's request. And because the Guidelines Manuel lacks an applicable policy statement, the trailing paragraph of 3582(C)(1)(A) does not curtail a district judge's discretion."); *United States v. McCoy*, F.3d, 2020 WL 7050097 at *7 (4th Cir. Dec. 2, 2020) ("We agree with the decisions of these courts of appeals, which reflect a growing consensus in the district courts. . . .[In]short, 1B1.13 does not apply to defendant filed motions under 3582(C)(1)(A)."); *United states v. Maumau*, No. 20-4056, 2021 U.S. App. LEXIS 9510 (10th Cir. Apr. 1, 2021) ("First, it ignores the fact that the Sentencing Commission has failed to fulfill its statutory duty to issue a post-First Step Act policy statement recognizing the ability of defendants to file their own motions for sentence reduction. Second, and relatedly, it effectively undercuts the statutory changes that Congress made in the First Step Act where it authorized defendants to file motions."); *United States v. Shkambi*, No. 20-40543, (5th Cir. Apr. 7, 2021) (The question presented was whether the U.S. Sentencing Commission's compassionate release policy statement binds district courts in considering prisoners' motions under the First Step Act. The district court said yes and dismissed *Franceska Shkambi's* motion for lack of jurisdiction. That was wrong for two reasons. First, the district court did have jurisdiction. And second, the policy statement is inapplicable. The court reversed and remanded for further proceedings consistent with this opinion); and *United States v. Aruda*, No. 20-10245, (9th Cir. Apr. 8, 2021) (The panel held that the current version of 1B1.13 is not an "applicable policy statement[] issued by the Sentencing Commission" for motions filed by a defendant under 18 U.S.C. 3582(C)(1)(A)).

The decisions also confirm that a district court's discretion is broad. *Jones*, 2020 WL 6817488 at *9 (noting that the district court's decision is reviewed under a deferential abuse of discretion standard); *Gunn*, 2020 WL 6813995 at *2 (explaining that district courts have discretion to resolve inmate filed compassionate release motions within the statutory scheme). For example, in *McCoy*, the Fourth Circuit affirmed several sentence reductions and held that the defendants' lengthy, stacked 924(c) sentences were a factor a district court could consider when resolving a 3582(C)(1)(A) motion: "In sum, we find that the district courts permissibly treated as 'extraordinary and compelling reasons' for compassionate release the severity of the defendants' 924(c) sentences and the extent of the disparity between the defendants' sentences and those provided for under the First Step Act." 2020 WL 7050097 at *11. And, in *Owens*, the Sixth Circuit recently ruled that a "District Court could consider whether defendant's rehabilitative efforts and lengthy sentence he received because of exercising his right to trial could, in

combination with First Step Act's changes to escalating sentencing scene for possession of firearms violations, constituted extraordinary and compelling reason for compassionate release, even though First Step Act did not make changes to sentencing scheme applicable retroactively." 2021 WL 1811538 at *1. Although, *Andrews* is yet to be decided, courts within the Third Circuit continue to use their discretion in determining what constitutes "extraordinary and compelling reasons" warranting a sentence reduction. See: *United States v. Ezell*, 2021 U.S. Dist. LEXIS 26618 (E.D. Pa. Feb 11, 2021) (Finding that the unduly harsh nature of his sentence and several other factors related to his rehabilitation and readiness to re-enter society present "extraordinary and compelling reasons" warranting a sentence reduction. The Court also denied the government's request to stay the motion pending *Andrews*.); See also: *United States v. Briggs*, 2021 U.S. Dist. LEXIS 71790 (E.D. Pa. Mar. 8, 2021) (same).

## V.　18 U.S.C. 3582(C)(1)(A) is a Sentence Reduction Vehicle.

Importantly, there exists a common misnomer, that 3582(C)(1)(A) is an all or nothing provision that requires a court to release the defendant or deny the motion. Indeed, nothing in the statutory language indicates that 3582(C)(1)(A) is an all or nothing provision. In fact, the term compassionate release "appropriately can be referred to and conceived as . . . "sentence modification" (or "sentence reduction")." *United States v. Ervin*, 2021 U.S. Dist. LEXIS 41695 (M.D. Tenn. Mar. 5, 2021) (quote *United States v. Maumau*, 2020 U.S. Dist. LEXIS 28392, 2020 WL 80621 at n. 2 (D. Utah Feb. 18, 2020). At least two Courts of Appeals have expressed that 3582(C)(1)(A) is not an all or nothing provision, but rather a *"Sentence Reduction Vehicle"*. For instance, in *Brooker*, the Second Circuit observed the following:

> It bears remembering that compassionate release is a misnomer. 18 U.S.C. 3582(C)(1)(A) in fact speaks of sentence reductions. A district court could, for instance, reduce but not eliminate a defendant's prison sentence, or end the term of imprisonment but impose a significant term of probation or supervised release in its place.

The Seventh Circuit's decision also confirms the Second Circuit's conclusion that 3582(C)(1)(A) is a sentence reduction vehicle and not an immediate release or nothing provision. *Jones,* 2020 WL 6817488 at *3 n.7. See also: *United States v. Clausen*, 2020 U.S. LEXIS 131070 (E.D. Pa. July 24, 2020) (Finding that "Courts have no obligation to reduce the sentence in a way that provides immediate release from prison.") And See: *United States v. Curry*, No. ELH-17-0387, 2021 U.S. Dist. LEXIS 7016 (D. Md. Jan. 14, 2021):

"The First Step Act does not constrain the Court to decide between immediate release or no reduction at all, and instead leaves the Court discretion in its evaluation of the appropriate sentence once it finds 'extraordinary and compelling reasons'" United States v. Braxton, Crim. No. JKB-09478, 2020 U.S. Dist. LEXIS 147379, 2020 WL 4748536 (D. Md. Aug. 17, 2020). Thus, the Court's decision need not be confined either to immediate release or leaving the existing sentence intact. The statutory text of the First Step Act allows courts to "reduce the term of imprisonment," upon a finding of "extraordinary and compelling reasons." 18 U.S.C. 3582(C)(1)(A).

The *Curry* Court went on to say:

Numerous district courts in both this Circuit and others have found that a court need "not choose between immediate, unconditional release or no relief at all" and have, accordingly, granted sentence reductions that did not result in immediate release. See, e.g., United States v. Johnson, No. RDB-07-0153, ECF. No. 183, 2020 U.S. Dist. LEXIS 190921 (D. Md. Oct. 14, 2020) (reducing sentence from 246 months to 168 months); United States v. Marks, 455 F. Supp. 3d. 17- 2020 WL 1908911, at *17 (W.D.N.Y. 2020) (reducing sentence from 40 years to 20 years); United States v. Arey, 461 F. Supp. 3d. 343, 2020 WL 2464796 (W.D. Va. 2020) (reducing sentence but denying immediate release); United States v. Day, 474. F. Supp. 3d. 790 2020 U.S. Dist. LEXIS 133586 (E.D. Va. 2020) (same). *Id.*

Notably, not one of the Seven Circuit Courts of Appeals who have agreed that 1B1.13 is not applicable to motions brought by defendants have ruled that 18 U.S.C. 3582(C)(1)(A) is an all or nothing provision that requires a court to release the defendant or deny the motion. As a matter of fact, a large number of district courts within those Seven Circuits have elected to reduce sentences in the alternative of granting time served. See: *United States v. Quinones*, 2021 WL 797835 (S.D.N.Y. Feb. 27, 2021) (Reduced from life to 35 years'); *Unites States v. Rodriguez*, 2020 WL 5810161 (S.D.N.Y. 2020) (Reduced from life to 30 years'); *United States v. Rios*, 2020 U.S. Dist. LEXIS 230074, 2020 WL 7246440 (D. Conn. Dec. 8, 2020) (Reduced from three-life sentences to 360 months); *United States v. Legette-Bey*, No. 1:02-cr-367, 1:03-cr-136, 2021 U.S. Dist. LEXIS 10165 (N.D. Ohio. Jan. 20, 2021) (Reduced from 1,846 months to 360 months and one day); *United States v. McDonel*, 2021 U.S. Dist. LEXIS 6401 (E.D. Mich. Jan. 13, 2021) (Reduced from 107 years' to 240 months); *United States v. Williams*, 2020 Dist. LEXIS 179932 (W.D. Va. Sept. 29, 2020) (Reduced from life to 188 months); *United States v. Austin*, 2020 U.S. Dist. LEXIS 221125 (N.D. Illinois. Nov. 25, 2020) (Reduced from 684 months to 288 months); United States v. Lyle, 2020 U.S. Dist.

LEXIS 231578 (S.D. Texas. Dec. 9, 2020) (Reduced from 1,141 months to 493 months); *United States v. Urkevich*, 2019 WL 6037391 (D. Neb. Nov. 14, 2019) (Reduced from 848 months to 368 months).

Thus, the Court can "reduce but not eliminate" Mr. Hogeland's "sentence, or end the term of imprisonment." *Id. Brooker*.

## VI.    The 30 day Claims Filing is not at Issue in this Case.

The 30 day claims filing requirement will not play a role in this case given that "30 days has passed since he (Mr. Hogeland) made his request, so defendant's motion is ripe for consideration by this Court." See: *Gov't's Resp. at 3*.

## VII.   The Court should find "Extraordinary and Compelling Reasons" and Reduce Mr. Hogeland's Sentence.

### A.  Mr. Hogeland's COVID-19 Concerns.

Since the government's response, Mr. Hogeland has been fully vaccinated. Therefore, Mr. Hogeland withdraws his COVID-19 argument as it *relates* to him being at great risk.  Although, he feels that he is still at risk because of his obesity, being a former smoker along with other medical concerns, Mr. Hogeland understands that being fully vaccinated has mitigated his chances of being infected and dying.  Mr. Hogeland, however, now argues that because he did take the vaccine at free will, this, when combined with the other factors rise to the level of extraordinary and compelling. Indeed, the Country as it stands today has not been fully vaccinated and many Americans are choosing not to vaccinate themselves.  The need to vaccinate the country is do dire, that free beers, lottery tickets, money and other incentives are being offered by the President of the United States and others, in an attempt to vaccinate the country. Thus, Mr. Hogeland's willingness to volunteer to be vaccinated in order to protect himself and others who are around him should be viewed as an act of patriotism. Indeed, President Biden has remarked, that being vaccinated is a patriotic duty.  When viewed in the context of Mr. Hogeland being vaccinated in order to prevent the spread of COVID-19 in the prisons, terms like remarkable, patriotic, and even "extraordinary character" should be used to define Mr. Hogeland's actions.

### B. Although the Court cannot base its Determination *solely* on Post Rehabilitation, Mr. Hogeland's level of Rehabilitation has *exceeded* the normal definition of what courts consider to be rehabilitation.

The only limit on what a court can consider to be extraordinary and compelling is 3582(C)(1)(A)'s requirement that the finding not be based *solely* on rehabilitation. Still, as detailed below, Mr. Hogeland's record in the BOP is one that goes *beyond* rehabilitation and is instead one that demonstrates that he has *transformed* and is already a positive, contributing member of society. Indeed, courts have found that "prisoners are supposed to follow rules, take classes, work at a job, and otherwise attempt to improve themselves. That a prisoner does so means that he has met *baseline* expectation, not that he has done something extraordinary." *United States v. Logan*, 2021 U.S. Dist. LEXIS 64988 (D. Minn. Apr. 1, 2021) (emphasis added). Nevertheless, the fact that Mr. Hogeland's 600 month *de facto* life sentence meant that he may never return to society again, makes his efforts to self-improve himself unique, and therefore should be viewed differently.[5] The Court will find that Mr. Hogeland's efforts to fully and unconditionally rehabilitate, and assist others was purely done on his own volition with the intentions of not only self-improving himself, but improving others. Under these circumstances, Mr. Hogeland's efforts to rehabilitate are nothing less than remarkable – indeed, they are extraordinary. On several occasions courts have found that actions that go *beyond* "a change in a defendant's circumstances that leads to a return to society with no further criminal activity" are a separate factor to be considered when determining whether extraordinary and compelling reasons exist. See in particular: *United States v. Torres*, 464 F. Supp. 3d 651, 663-664 (S.D.N.Y. 2020). The *Torres* court noted that "[m]any defendants who has pass through this Court ultimately become fully functioning members of society – they achieve, so to speak, rehabilitation." *Id.* at 664. Separate and apart from the usual rehabilitation are efforts to assist fellow inmates and the prison community as a whole, this service "exceed the bounds of what we consider 'rehabilitation.'" *Id.* at 663. The *Torres* court explained:

> Here, by comparison, the Torres brothers have established a decade's long record of meaningful community service, a record that would be notable even

---

[5]  *With Good Time Credit, Mr. Hogeland will be 86 years old when released, and without Good Time Credit, Mr. Hogeland will be 93 years old when released from prison. When taking into consideration Mr. Hogeland's medical issues, it is likely that if his sentence remains unchanged he will die in prison.*

outside of the federal prison system. . . .The Court concludes that the Torres brothers' contributions are, as the statute requires, "extraordinary and compelling." *Id.* at 664.

Importantly, *Torres* involved defendants serving *life sentences* based on their "large scale, street level heroin distribution network operating mainly out of the South Bronx." Nor is the decision in *Torres* the only example of courts finding that a defendant going beyond basic rehabilitation can be a factor in determining whether extraordinary and compelling circumstances exist. See: *United States v. Rodriguez*, F. Supp. 3d. 2020 WL 5810161 at *5 (S.D.N.Y. Sept. 30, 2020) (finding extraordinary and compelling circumstances for defendant serving a **life sentence for a violent offense involving the killing of a confidential informant** and noting: "[t]he Court finds that this overwhelming evidence of, not just rehabilitation, but transformation, weighs in favor of a finding that extraordinary and compelling reasons exist to modify Rodriguez's sentence. That Rodriguez has developed such an outstanding record in prison "without any tangible incentive other than self-improvement, given that his life sentence meant that he could neither earn any 'good time' credit nor receive any other sentence reduction benefit" weighs all the more strongly still."); See also: *United States v. Millan*, 2020 WL 1674058 at *8 (S.D.N.Y. Apr. 6, 2020) (finding extraordinary and compelling circumstances for defendant serving life sentence and observing "[i]n the almost three decades that have passed since he was arrested (and detained) in 1991, and despite having no realistic hope of release, Mr. Millan has done everything in his power to rehabilitate himself, as demonstrated by his genuinely exceptional accomplishments and meritorious prison record. He is remorseful and contrite and has fully accepted responsibility for his crimes. In the almost three decades that he has been incarcerated, Mr. Millan has conducted himself as a model prisoner and demonstrated exceptional character. He has developed into a man of great faith and a leader of the religious community at FCI Fairton and has demonstrated a commitment to working at risk youth and suicide prevention."). Below, the Court will find that the type of rehabilitation, self-improvement and service the *Torres, Rodriguez*, and *Millan* courts dealt with is decidedly similar to that found in Mr. Hogeland's case.

## 1. Mr. Hogeland's time in the BOP has been Exemplary and his Record of Rehabilitation is Consistent and Complete.

Mr. Hogeland was 42 years old when the events that formed the basis of this offense took place. Still, the fact that he is on a different path is evident from the start of his time in custody when he was arrested on July 15, 2004. Since then, Mr. Hogeland has

been an exemplary inmate and has demonstrated that he is completely and unconditionally rehabilitated.

To begin with, Mr. Hogeland has earned certificates for participated in numerous BOP programs. See: Ex A-2 (Educ. Trans) & Ex A-3(Certificates). Some of the programs Mr. Hogeland completed include, Drug Education, Industry Safety & Health, Mindful Based Stress Reduction, Recreation Aid, Plyometric Training, Construction – Ladder Safety & Fall Protection, and Healing for Damaged Emotions. See: Ex A-2 & A-3 (for other programs completed and certificates received by Mr. Hogeland).[6]

In addition to participating in numerous BOP programs, Mr. Hogeland has maintained employment within the BOP as an emergency plumber and a UNICOR worker for the Federal Prison Industry as FCI Fairton where he currently holds the position of "Final Quality Inspection Clerk." While in UNICOR, Mr. Hogeland has trained in various areas amounting to over 6,000 hours of training. Due to his "awesome job" at UNICOR – Ex A-4 (Evaluation Report), UNICOR payed for Mr. Hogeland to participate in the Certified Quality Improvement Associate course, where he has earned a certificate for "Quality Improvement." See: Ex A-5 (CQIA Certificate). Mr. Hogeland has also earned a certificate from UNICOR for participating in the "Sorting, Testing, Packing and Safety Procedure" course. See: Ex A-6 (UNICOR Certificate).

FCI Fairton's BOP UNICOR Quality Assurance Manager, Mr. Marti, notes the following about Mr. Hogeland:

> Mr. Hogeland currently holds the title of Final Quality Inspector and has worked in UNICOR at FCI Fairton since May 2018 to present. During this time he has actively participated in all training opportunities relating to Quality Assurance and has excelled in all areas. His skill set would be an asset to any company. He shows interest in his work and has dedicated himself to improving this skill. Inmate Hogeland has gained the respect of his co-workers do to his knowledge and skill as the Final Quality inspector. He is a good example to other workers. He bring a positive attitude and desire to learn within the work environment. He is respectful to authority and never questions directives. He is easy to work with and can be depended upon to complete tasks on time. Along with being an excellent worker, inmate Hogeland has helped UNICOR through his ability to train and lead other employees in their job duties. Although not required, he has done

---

6  Because of the restrictions placed on BOP prisons due to the pandemic, Mr. Hogeland's ability to educate himself has decreased.

this solely on his own initiative. While supervising inmate Hogeland, I've found him to be a hard working individual with an excellent attitude. I would be very comfortable hiring this individual in the future and feel he will be a productive member of society. <u>See</u>: *Ex A-7 (UNICOR Letter).*

FCI Fairton's BOP UNICOR Factory Manager, Mr. Persaud, also notes the following about Mr. Hogeland:

Mr. Hogeland current position is a final Quality Assurance personnel and is responsible for ensuring that all finish production are to customer service satisfaction. Mr. Hogeland is also responsible for material coming into the factory and shipping out the factory. Staff trust Mr. Hogeland with documenting correct information as a receiving clerk for UNICOR. Mr. Hogeland continues to be an asset to UNICOR operation with his attention to details. <u>See</u>: *Ex A-8 (UNICOR Letter).*

The BOP sums up Mr. Hogeland's progress as follows:

Inmate Hogeland receives outstanding work performance evaluations based upon his overall job proficiency. . . Inmate Hogeland participated in numerous programs during his incarceration . . . Inmate Hogeland has maintained clear conduct during his incarceration. He interacts appropriately with staff and is not considered to be a management concern at this time . . . Overall, inmate Hogeland is not a management concern and he participated in numerous programs during his incarceration. He interacts appropriately with staff and other inmates. <u>See</u>: *Ex A-9 (Progress Report).*

In addition to the BOP progress report, and the impressive reviews noted by BOP employees on Mr. Hogeland's prison record – family members, and friends have also submitted letters of support on behalf of Mr. Hogeland, detailing his remarkable transformation:

- Mr. Fred Hogeland, the father of Mr. Hogeland, notes, "It has been almost 16 years since he was first incarcerated and he has learned a lot of good things in that time, degrees in the bible and business. I think he is rehabilitated and is ready to come home and help his 86 year old father (his mother – my wife, died last year) out in his senior years."[7] <u>See</u>: *Ex A-10.*

---

[7] Here, Mr. Hogeland's father expresses how much he needs his son to "help his 86 year old father out in his senior years." The Court should view this as a "family circumstance" within 1B1.13 or in combination with the other factors detailed herein to demonstrate "extraordinary and compelling reasons" warranting a sentence reduction.

- Frank Hogeland, the brother of Mr. Hogeland, notes, "James has served quite a bit of his unusually harsh sentence . . . He's had an exceptional clean prison record and has been a model prisoner at all times. He's furthered his education and renewed his faith . . . I'm suffering from a rare form of leukemia/lymphoma and I anticipate some rough times ahead. **James would be able to help with the care of our 87 yr old father whose health is starting to decline.**" See: *Ex A-11*. (emphasis added)

- Donna Hogeland, the sister of Mr. Hogeland, notes, "I am very grateful for the reform he has made through the Federal Detention System. I have visited him once a year for the last 16 years in prison and he is truly a changed person . . . I am asking that he be released and be pardoned and be allowed to return home to our family. **I hope he can live with Fred Hogeland, our father who is 86 as his caretaker.**" See: *Ex A-12*. (emphasis added)

- Debbie Celebucki, the sister of Mr. Hogeland, notes that he should be released because while in prison "he has worked, served others, accepted his sentence, improved himself and has never been reprimanded for his behavior." See: *Ex A-13.*

- Hana Stusser, the niece of Mr. Hogeland, notes, "For almost my entire life, my uncle Jim has been in prison. However, this has not stopped us from having a relationship or being a part of each other's lives . . . My uncle has never failed to send me a kind and heartfelt birthday card, Christmas card or Easter card." See: *Ex A-14.*

- Mari Stusser, the niece of Mr. Hogeland, notes, "Over the years I have found a lot of joy and meaning in writing letters to him. His responses are always so beautifully written, upbeat and full of enthusiasm for what I am doing in my life . . . Now that my grandmother has passed away, **my Grandpa Fred lives alone, and needs the care of his son more than ever.**" See: *Ex A-15*. (emphasis added)

- Ashoka Celebucki, the nephew of Mr. Hogeland, notes, "I think he has served a long enough sentence in prison and has changed . . . **Another big benefit of him being released is he could go and take care of my . . . Grandpa . . .**" See: *Ex A-16*. (emphasis added)

- Carol Tinneny, who is the owner of "Tinneny Plumbing & Heating Inc." company, and who is also a friend and former employer of Mr. Hogeland, notes, "If in your heart he would be granted a second chance I would not hesitate to hire him on a full time basis for my plumbing & heating business . . . I have been the owner for over 30 years and at one time long ago Jimmy (Mr. Hogeland) was part of." See: Ex A-17.

- Gina M. Clark, a friend of Mr. Hogeland, notes, "Mr. Hogeland has been a model inmate . . . He has furthered his education, offered assistance to other inmates when they are having a hard time as well as offered his knowledge to plumbing and heating to aid in the repairs in the prison . . . I am personally honored to call Mr. Hogeland my friend . . ." See: Ex A-18.

- Theresa Hlywski, a friend of Mr. Hogeland, notes that Mr. Hogeland "has come a long way both spiritually and ethically." See: Ex A-19.

- Janine Sternlieb, a friend of Mr.Hogeland, notes that Mr. Hogeland "is a skilled and hard-working man. He has repented of his wrongs and wants only to be a generous and law-abiding member of society . . . I fully support his release and pardon." See: Ex A-20.

- Spencer Sherman, a friend of Mr. Hogeland, notes that Mr. Hogleland "is a man that wants to give back and I believe that his release from prison will benefit many." See: Ex A-21.

- Tracy Saucier, a friend of Mr. Hogeland, notes that Mr. Hogeland "is a peaceful and transformed human being whose gifts would greatly benefit their family, his community, and the world." See: Ex A-22.

- Tara Brown, a friend of Mr. Hogeland, notes that Mr. Hogeland "has embraced his life on the inside through his service to other inmates and his capacity to maintain a steadiness in his prison jobs." See: Ex A-23.

- Katherine Presley, a friend of Mr. Hogeland, notes, "I think James (Mr. Hogeland) reform is commendable and worthy of his case being reconsidered. He made terrible errors but found his way to make fundamental changes in himself and

make amends in the way he could, in a very responsible human way." See: Ex A-24.

- Inmate Frank Goodman, a friend of Mr. Hogeland notes, "James (Mr. Hogleand) accepted me from the start of my stay in Lewisburg and instantly greeted and cared for me as a brother without bounderies! . . . James is a man of God and encourages others to strive for change and being better people daily." See: Ex A-25.

The aforementioned makes clear that Mr. Hogeland's "accomplishments while in prison and his level of rehabilitation are extraordinary." *United States v. Mack*, 2021 U.S. Dist. LEXIS 53947 (S.D. Ohio. Mar. 23, 2021). This is true, especially when taking into consideration that Mr. Hogeland's rehabilitative efforts were motivated by his willingness to self-improve himself, and others, despite serving a *de facto* life sentence.

What's more, is that Mr. Hogeland, despite being housed in high and medium risk facilities, where violence, drugs and contraband of all sorts is prevalent, has managed to remain trouble free. In the 17 years Mr. Hogeland has been incarcerated he has not received *one* disciplinary write up. Indeed, not *one* disciplinary write up in 17 years demonstrates that Mr. Hogeland is not a violent individual, and that he is without a doubt fully and unconditional rehabilitated. There is no other way but to view Mr. Hogeland's self-motivated rehabilitative efforts, and impeccable prison record as an *unusual* and *un-comparable* circumstance – at least in this Court. When combined with the other factors detailed below, a sentence reduction – even to time served is warranted.

Importantly, and worth noting, due to his level of rehabilitation and spotless prison conduct, the BOP rewarded Mr. Hogeland by transferring him from a USP (High Risk) facility to a FCI – Medium Risk facility. Today, Mr. Hogeland's classification status reflects "Camp custody." See: Ex A-26 (*Custody Report – 10 points and under makes an inmate eligible for Camp custody – Mr. Hogeland's custody points is at 3*). As the Court is aware, being at a low or minimum institution is important for inmates who are transitioning back into society. However, due to Mr. Hogeland's lengthy sentence, it is unlikely that he may ever enjoy the possibility of being transferred to an institution that can help prepare his transition back into society. The Court can however, change that by reducing Mr. Hogeland's sentence.

## 2. Mr. Hogeland's Efforts have gone Beyond Rehabilitating himself and his Service to Others make it Clear that he is already a Contributing Member of Society.

Beyond rehabilitating himself, Mr. Hogeland has a record of contributing to the prison community including service to others. His service focuses on guiding others to a life of faith amongst other things. Before becoming a minister within the prison community, Mr. Hogeland made it a priority to educate himself religiously within the Christian faith. For instance, Mr. Hogeland has completed multiple "Life Keys" courses dealing with chapters and versus of the Bible. As a result he has earned 46 certificates. See: *Ex A-27 (Life Keys – Student Trans.)*. Mr. Hogeland also earned 2 certificates from the "The Salvation Army" for completing "the Christian Life" Bible correspondence course that they offer. See: *Ex A-28 (Certificates From The Salvation Army)*. Mr. Hogeland has also earned 3 certificates from the "American Bible Academy" where he took 9 exams, See: *Ex A-29 (ABA Certificates)* and he has received a Diploma from "The Voice of Prophecy Worldwide Bible Broadcasters" for completing 26 of their lessons. See: *Ex A-30. (TVPWBB Diploma)*. Mr. Hogeland did not stop there. Indeed, he has went on to earn a Bachelor's Degree on Ministry, See: *Ex A-31 (Bachelor's Degree and Student Trans.)* and a Bachelor's Degree on Biblical Studies. See: *Ex A-32 (Bachelor's Degree and Student Trans.)*.

Mr. Hogeland has used his knowledge on Biblical Science and Ministry to assist the BOP Chaplain services and the prison community in general. The Founder and President of "Good Shepherds Ministries International" Dr. Berin Gilfillan, notes the following about Mr. Hogeland's assistance as a facilitator of their programs which helps other fellow Christians grow:

- Our Organization . . . would like to inform you that our ISOM program, a discipleship and leadership Christian ministry training tool, has been implemented at FCI Fairton, NJ. For several years. Mr. James Hogeland has been part of our alumni since 2014 when he graduated from our Associates program. He continued his studies with ISOM obtaining a Bachelor's Degree in Ministry from Vision International University in 2016. Since then, he became a facilitator of our program helping other Christians to grow in their faith. In addition, Mr. James Hogeland has been teaching 2 classes of 6 and 8 students within the Associates level at his facility. We can only say that Mr. James Hogeland is a great asset to the Body of Christ and the Kingdom of God by helping other Christians mature in their faith. See: *Ex A-33 (GSM Letter)*.

Mr. Hogeland also assisted the BOP by "volunteering his professional Plumbing skills to assist Fac. Dep't with suicide/psych. Obs. Room conversion from Porcelain to Stainless Steel combination units. This is to reduce the chance of a suicide attempt." See: Ex A-34 (*BOP Monetary Special Award form*). Indeed, the BOP rewarded Mr. Hogeland with $100.00 for "an act which protects lives of employees or inmates, or the property of the United States." *Id*. Mr. Hogeland's assistance to the BOP and inmates does not stop there. In addition to his voluntary work, Mr. Hogeland has also participated in the BOP Suicide Watch Program where he has earned 2 certificates for training. See: Ex A-35 (*SWP Certificates*). As a Suicide Watcher, Mr. Hogeland received evaluations for his excellent work and assistance. BOP Chief Psychologist, J. Sage. Notes the following about Mr. Hogeland's responsibility as a Suicide Watcher:

> This is to advise that inmate James Hogeland, Reg. No. 59573-066, is a member in good standing of the Psychology Services Suicide Watch Companion Team. This team is comprised of 24 inmates who have offered their time to provide visual supervision of inmates placed on suicide watch within the institution and to respond to potentially life-threatening emergencies. See: Ex A-36 (*BOP Chief Psych. Letter*).

Former Director of the BOP Charles E. Samuels, Jr. expressed his "respect and appreciation" for the work that inmates do to prevent a suicide attempt in a letter as follows:

> Of the many valuable inmate programs offered by the Bureau of Prisons, the Inmate Companion Program is one of which I am particularly proud. This program is an example of inmates helping inmates. Those of you who participate in this program are contributing to your community by providing support and hope to your peers . . . I have great respect and appreciation for the work you do to prevent suicide and support your peers through their darkest moments. Your work, in collaboration with the professional mental health services provided by the Bureau, truly has the power to save lives. See: Ex A-37 (*Director of BOP Letter*).

The evidence presented above demonstrates that Mr. Hogeland has exceeded "the bounds of what we consider rehabilitation." *Torres*, 464 F. Supp. 3d at 663. Black's Laws Dictionary (11th ed. 2019) defines *rehabilitation* in ordinary parlance as "[t]he process of seeking to improve a criminal's character and outlook so that he or she can function in society without committing other crimes." See also: Mistretta v. United States, 488 U.S. 361, 363, 109 S. Ct. 647, 102 L. Ed. 2d. 714 (1989) (defining the goal of rehabilitation as "to minimize the risk that [a defendant] would resume criminal activity upon his return

to society."). As indicated above, the type of rehabilitation, self-improvement and service the *Torres, Rodriguez*, and *Millan* courts dealt with is decidedly similar to that found in Mr. Hogeland's case. Indeed, Mr. Hogeland "has used his . . . years in prison not just to better himself but also to better his community." Rodriguez, 2020 U.S. Dist. LEXIS 181004, 2020 WL 5810161, at 4. "It is this pattern of meaningful, positive influence on those around him that rises above 'rehabilitation . . . alone' and comprises an extraordinary and compelling reason for early release." *United States v. Underwood*, 2021 U.S. Dist. LEXIS 8378 (S.D.N.Y. Jan. 15, 2021). Even the *Logan* Court acknowledged that although "prisoners are supposed to follow rules, take classes, work at a job, and otherwise attempt to improve themselves" and "that a prisoner does so means that he has met *baseline* expectation, not that he has done something extraordinary," "the Court recognizes that there could be truly extraordinary instances of rehabilitation, such as a defendant who risks his life to help his fellow inmates in a pandemic or to rescue a corrections officer who has come under attack." *United States v. Logan*, 2021 U.S. Dist. LEXIS 64988 (D. Minn. Apr. 1, 2021) (emphasis added).

Importantly, Mr. Hogeland was also one of few inmates who was selected at the height of the pandemic to assist UNICOR in producing face shield masks for front line workers.

By any measure, Mr. Hogeland's *de facto* life sentence makes his *transformation*, level of rehabilitation, record of service, and transition to a productive member of society unique and compelling, and therefore, demonstrates an extraordinary and compelling reason warranting a sentence reduction.

## C. Harsh Prison Conditions Due to the Pandemic.

The harsh prison conditions due to the pandemic, combined with the other factors described herein demonstrate extraordinary and compelling reasons warranting a sentence reduction. At least one Court of Appeals (Second Circuit) has indicated that while rehabilitation "alone" is insufficient, it can "interact with the present coronavirus pandemic" to create an extraordinary and compelling reason for a sentence reduction. See: *Brooker*, 2020 U.S. App. LEXIS 30605, 2020 WL 5739712, at *9. Importantly, the Second Circuit did not restrict the use of the term "pandemic" when analyzing what can be considered an extraordinary and compelling circumstance. Thus, the harsh prison conditions that exist today are due to the "pandemic," therefore, courts may consider prison conditions when evaluating compassionate release motions. See: *United States v. Quinones*, 2021 U.S. Dist. LEXIS 37628, *5 (Feb. 27, 2021. S.D.N.Y.) ("the Court finds, as it did with Rodriguez, that the pandemic, because of the concomitant lockdowns and

restrictions that are necessary to ensure inmate safety, has rendered Quinones's incarceration "far harsher and more [*6] punitive than the Court had anticipated at sentencing." Rodriguez, 2020 U.S. Dist. LEXIS 181004, 2020 WL 5810161. At *8. This too, is relevant to the Court's finding of extraordinary and compelling reasons. See also: United States v. Bass, 2021 U.S. Dist. LEXIS 28791 (E.D. Mich. Feb. 8, 2021) ("Today, compassionate release is widely understood as a means of protecting defendants from suffering harm due to unforeseen changed circumstances during their sentences.").

The Court in *Ciprian* said it best:

> As has been widely chronicled, the pandemic has required extreme restrictions on prisoners' movements and visits. It also exposed prisoners to heightened fears of contagion. Long before the current pandemic, courts had recognized that periods of pre-sentence custody spent in unusually arduous conditions merited recognition by courts measuring the just sentence. The same logic applies here. A day spent in prison under extreme lockdown and fear of contracting a deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison. While not intended as punishment, incarceration in such conditions, is unavoidably, more punishing. *United States v. Ciprian*, No. 11-CR-1032-74 (PAE) 2021 U.S. Dist. LEXIS 18698 (S.D.N.Y. Feb. 1, 2021).

In a recent case, *United States v. Hatcher*, No. 18-CR-454-10 (KPF) WL 1535310 (S.D.N.Y. 2021) (The court noted that it has previously "found that harsh prison conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently "extraordinary and compelling" to warrant compassionate release." However, the court went on to note that its rulings on that were "issued in the fourth, rather than the thirteenth month of the COVID-19 pandemic. **Moreover, it is also true that courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences harsher and more punitive than would otherwise have been the case.**"). For the past 15 months, Mr. Hogeland has suffered from the harsh prison conditions presented by COVID-19. As indicated above, Mr. Hogeland's ability to continue programming at a high level has diminished because of the pandemic. Further, since the start of the pandemic, Mr. Hogeland has yet to visit with his family. Indeed, despite having a *de facto* life sentence, visiting with his family has allowed Mr. Hogeland to maintain a strong relationship with his family members, especially with his elderly father, which has played a major factor in Mr. Hogeland's efforts to rehabilitate himself. Knowing the importance of family contact visiting and the impact such privileges can have on an individual, the Court

"recommended" after considering the letter Mr. Hogeland's mother wrote to the Court, that Mr. Hogeland "be imprisoned or incarcerated as close to Philadelphia as possible so that she and your father can visit you." <u>See</u>: *Sent Trans. at 22.* The Court should find the punitive punishment Mr. Hogeland has endured in prison during the past 15 months due to the pandemic very concerning, especially in light of the fact, that Mr. Hogeland has clearly demonstrated his willingness to educate himself and be fully involved in his family's lives. Thus, the Court should consider the *unforeseeable – additional punishment* that the Court nor the government seen coming at the initial sentencing when *combined with the other factors* detailed herein, as an "extraordinary and compelling" reason warranting a sentence reduction.

Moreover, the harsh prison conditions are also relevant when analyzing the 3553(a) factors. As the Fourth Circuit Court of Appeals recently expressed: ("Section 3582(C)(1)(A) necessarily envisions that the 3553(A) factors may balance differently upon a motion for compassionate release than they did at the initial sentence."). Chief Judge Roger Gregory went on to note, ("There is good reason to believe that, in some cases, a sentence that was 'sufficient but not greater than necessary' before the coronavirus pandemic may no longer meet the criteria. A day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be. In these times, drastically different. These conditions, not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect."). *United States v. Kibble*, No. 20-7009, 2021 U.S. App. LEXIS 9530 (4th Cir. Apr. 1, 2021).

Thus, Mr. Hogeland's *transformation,* level of rehabilitation, spotless prison record, and service to the prison community *in combination* with the harsh prison conditions due to the pandemic, along with the others factors detailed below, warrant granting Mr. Hogeland's motion for a sentence reduction – even to time served.

## D. <u>Trial Penalties along with the Other Factors detailed herein Rise to the Level of Extraordinary and Compelling</u>.

Mr. Hogeland submits that the Court should consider the "lengthy sentence he received because of exercising his right to trial" *Owens*, 2021 WL 1811538 at *1, in combination with the other factors detailed in his motion and find that "extraordinary and compelling reasons" exist warranting a sentence reduction – even to time served.

The government being fully aware that Mr. Hogeland had one prior drug felony conviction used his prior conviction to their advantage throughout the plea negotiation phase. Indeed, on October 19, 2007, three (3) months after the Court allowed Mr.

Hogeland to withdraw his guilty plea, the government re-filed "an information charging a prior felony drug conviction pursuant to 21 U.S.C. 851 (a)" in order to enhance Mr. Hogeland's sentence in the event he was found guilty. See: PSR at 4. Because Mr. Hogeland made the decision to withdraw his guilty plea and exercise his right to trial, the government re-submitted an 851 notice indicating that they would be pursuing a mandatory minimum sentence of 20 years on the drug charges. It was due to this type of behavior that in 2010, Attorney General Eric Holder, and the Department of Justice issued a new policy refining its charging policy regarding mandatory minimums for certain non-violent, low level drug offenders. The policy provided that the 851"enhancment should not be used in plea negotiations for the sole or predominant purpose of inducing a defendant to plead guilty." Indeed, the policy held that "[a] practice of routinely premising the decision to file an 851 enhancement solely on whether a defendant is entering a guilty plea, however, is inappropriate and inconsistent with the spirit of the policy." See: (DOJ Policy on the usage of 851 penalties). It was also due to this abuse of power by the government that led to Congress amending the penalties under 851. See: First step Act. The facts in this case shows that Mr. Hogeland was not involved in a large conspiracy where large amounts of drugs were being distributed. Although, Mr. Hogeland was involved in a serious drug offense, he was not a leader, manager or supervisor of a major drug distribution ring. Indeed, Mr. Hogeland was a "low level-drug dealer." Today, prior felony convictions are rarely used to enhance a defendant's sentence who are considered to be low level drug dealers, especially when they have drug addiction problems like Mr. Hogeland. The fact that the government used the 851 notice as a tool to influence Mr. Hogeland to plead guilty, then re-submit it when he decided to instead, exercise his right to trial, demonstrates an abuse of power by the government, which today should qualify as an "extraordinary and compelling" reason warranting relief.

In light of the Sixth Circuit's recent ruling in Owens, Mr. Hogeland submits that the 20 year mandatory minimum sentence he received for his drug conviction in addition to the 30 years he received for other crimes he was convicted of, simply because he chose to exercise his right to a trial, is an extraordinary factor that when combined with the other factors detailed herein, demonstrate "extraordinary and compelling reasons" warranting a sentence reduction – even to time served.

## E. First Step Act Changes to 851 Penalties when *combined* with the Other Factors detailed herein Rise to the Level of Extraordinary and Compelling.

In light of the changes the First Step Act made to 851 penalties, Mr. Hogeland submits that today he would have been subject to a 15 year mandatory minimum sentence rather than 20 years he was sentenced to. The government in their response to Mr. Hogeland's motion for compassionate release conceded that Mr. Hogeland if sentenced today under the First Step Act would be sentenced to "45 years instead of 50 years." See: Gov't's response at 16. The government argues however, that because the changes made to 851 penalties were not made retroactive, that "that fact does not warrant any relief at this time." Id. at 16. While it is true, that such changes were not made retroactive, district courts around the country to include courts within this district, have granted compassionate release motions in part due to the changes made to 851 penalties. See: *United States v. Dubois*, 2021 U.S. Dist. Lexis 29848 (E.D. Pa. Feb. 17, 2021) (finding that the changes made to 851 penalties along with defendant's rehabilitation warrant granting defendant's compassionate release motion.); See also: *United States v. Swint*, 2021 U.S. Dist. LEXIS 62433 (E.D. Pa. Mar. 31, 2021) (same) (quoting *United States v. McGee*, 2021 U.S. Dist. Lexis 9074 (10th Cir. Mar. 2021) (Where the Court concluded that "the fact that a defendant is serving a pre-First Step Act mandatory life sentence imposed under 841(b)(1)(A)" can, in conjunction with other factors present extraordinary and compelling circumstances).

Importantly, the Court in *Dubois*, similar to this Court, observed that "at sentencing, after noting defendant's criminal history which includes a number of convictions for drug related crimes, the Court states as follows: Even with your drug crimes and your other criminal conduct . . . a life sentence for the crime of conviction is much too harsh a sentence to impose. It just overstates the seriousness of the offense. And were I given any discretion . . . I would impose a substantially lower sentence." Id. Dubois.[8]

Thus, the Court should use its discretion in this case to find that the changes made to 851 penalties in combination with other factors – especially Mr. Hogeland's unique level of rehabilitation, "extraordinary and compelling reasons" exist warranting a sentence reduction – even to time served. See: *Clausen*, 2020 U.S. LEXIS 131070 (E.D. Pa. July 24,

---

[8] *As indicated above, the Court noted for the record at sentencing, that the sentence Mr. Hogeland was exposed to, was "well in excess of what" the Court would have imposed if the Court "weren't bound by the statutory mandatory minimums . . ." See: Sent Trans. at 16-17.*

2020) (finding that "nothing prevents the Court from concluding that a combination of factors, including rehabilitation, can together establish extraordinary and compelling reasons.").

And finally, although the changes made by the First Step Act to 851 penalties would reduce Mr. Hogeland's sentence by 5 years (from 20 year mandatory minimum to 15 year mandatory minimum) if he were sentenced today, the Court has the "authority to reduce [a defendant's] sentence to a length it deems appropriate, even if that length is shorter than the current mandatory minimum." *Id. Dubois*. Indeed, "[s]everal other district courts including one in this District, [] have reduced sentences to below the current mandatory minimum in granting compassionate release." *Id. Dubois*. (Referencing *Rodriguez*, 2020 U.S. Dist. LEXIS 58718 (E.D. Pa. Apr. 1, 2020) (Where the Court sentenced defendant under the current mandatory minimum despite Rodriguez's "history involving a serious conviction for drug dealing as well as the firearm offenses . . ." The Court determined that the seventeen years Rodriguez served "is a long time – long enough to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public.").

## F. Avoidance of Unwarranted Sentencing Disparity Among Defendants Constitutes "Extraordinary and Compelling Reasons" Supportive of a Sentence Reduction.

Allowing Mr. Hogeland's *de facto* life sentence to remain unchanged precipitates a circumstance of unwarranted sentencing disparity. As the Third Circuit has observed in *United States v. Bard*, 802 Fed. Appx. 691, 2020 U.S. App. LEXIS 4437 (Feb. 2020) ("18 U.S.C. 3553(a)(6) instructs courts to consider the need to avoid unwarranted sentence disparities, among defendants with similar records who have been found guilty of similar conduct. Under this framework, disparity sentences are allowed where the disparity is explicable by the facts on the record. While Mr. Hogeland does not minimize his past conduct, it bears emphasizing that since the passing of the First Step Act, courts around the country continue to grant compassionate release motions brought by defendants whose crimes are far more serious than Mr. Hogeland. Although, Congress specifically focused on a national disparity involving defendants with similar records who have been found guilty of similar conduct, this does not preclude the Court from comparing Mr. Hogeland's sentence to those sentences of defendants who have committed far worse crimes than Mr. Hogeland, but have received sentence reductions – even to time served under 3582(C)(1)(A). The following cases demonstrate an unwarranted sentence disparity:

The decision in *United States v. Quinones*, 2021 WL 797835 (S.D.N.Y. Feb. 27, 2021) is one prime example. *Quinones*, involved Alan Quinones, who was the head of an organization "in the Bronx and elsewhere" that was "focused in the distribution of cocaine and heroin." *Id.* at *1. Once he was arrested, Quinones and an associate retaliated against a *confidential informant* by having him killed. The informant's death was preceded by brutal torture. *Id.* At trial, Quinones and his associates faced the death penalty, but ultimately received a sentence of life imprisonment. *Id.* Despite a *letter* written by the murder victim's mother "registering her opposition to any sentence reduction," the court ultimately reduced Mr. Quinones's sentence to a "term of 35 years' imprisonment, to be followed by lifetime supervised release." *Id.* (Quinones's sentence was reduced in part due to his transformation).

Prior to the decision in *Quinones*, the court granted *Quinones's* codefendant Diego Rodriguez' compassionate release motion. See: *United States v. Rodriguez*, F.Supp.3d, 2020 WL 5810161 (S.D.N.Y. 2020). Diego Rodriguez was Quinones' "chief lieutenant." Like *Quinones*, the court reduced Rodriguez's sentence to 30 years' followed by a lifetime of supervision. *Id.* (Rodriguez's sentence was reduced in part due to his transformation).

Similarly, the defendant in *United States v. Underwood*, 2021 U.S. Dist. LEXIS 8378 at *2 (Jan. 15, 2021, S.D.N.Y.), was the head of a violent drug distribution organization based in West Harlem. "The group was responsible for at least five murders, and one attempted murder, committed at Underwood's direction. These murders were brutal and calculated, aimed specifically at 'eliminating and intimidating competitors, *informants*, and actual or potential witnesses.'" *Id.* (emphasis added) (Underwood's sentence was reduced in part due to his transformation).

Other courts have reached similar results. See: *United States v. Perez*, No. 3:02-CR-7 (JBA) 2021 U.S. Dist. LEXIS 41040 (D. Conn. Mar. 4, 2021). After a jury trial the defendant (*Perez*) was convicted on four counts related to the murder of Theordore Casiano. The defendant was found guilty in violation of 18 U.S.C. 1958 (Interstate Murder for hire); 18 U.S.C. 1958 & 2 (Aiding and Abetting); 18 U.S.C. 1959(a)(1) & 2 (Racketeering – Aiding and Abetting) and 18 U.S.C. 924(C)(J)(1) & 2 (Causing Death by use of a Firearm). The defendant was sentenced to life. He ultimately served 23 years. **Importantly, the government agreed "that releasing defendant after *twenty three years* of incarceration does not present a risk to the public."** (emphasis added) (Perez's sentence was reduced in part due to his transformation). See also: *United States v. Rios*, 2020 U.S. Dist. LEXIS 230074, 2020 WL 7246440 (D. Conn. Dec. 8, 2020). The defendant (*Rios*) was a Latin King Member. After a jury trial, defendant was convicted of violating

18 U.S.C. 1962(C) (RICO) 18 U.S.C. 1962(d) (Rico conspiracy); 18 U.S.C. 1959(a)(1) (VICAR – Murder). The defendant received three life sentences. He ultimately received a sentence reduction from three-life sentences to 360 months. The defendant had served 26 years at the time when he filed for compassionate release. (Rios's sentence was reduced in part due to his transformation); *United States v. Douglas*, 2021 WL 214563 at *1 (D.D.C. Jan. 21, 2021), involved a defendant who had "served almost fifty month of a 120 month sentence for second degree murder in connection with the 1990 killing of Anthony Morrisey, imposed in 2012 to run consecutive to a state sentence he was serving in New York for a different homicide offense." (Douglas's sentence was reduced in part due to his transformation); *United States v. Bass*, 2021 U.S. Dist. LEXIS 11719, No. 97-80235-1 (E.D. Mich. Jan. 22, 2021), involved a defendant who had **5 prior felony convictions** and was found guilty by a jury trial for conspiracy to distribute **50 kilos or more of crack cocaine**, and **murder in connection to his drug trafficking. The defendant was _34 years of age_ when the crime was committed and he was the head of the organization.** He received two concurrent life sentences, but his **compassionate release motion was granted resulting in a sentence of time served after serving 22 years.** (emphasis added) (Bass's sentence was reduced in part due to his transformation). And finally, *United States v. Greene*, 2021 Dist. LEXIS 19243, No. 71-CR-1913 (KBJ) (D.D.C. Feb. 2, 2021), involved a defendant who disarmed three Marshals, to help his brother escape from a furlough. **The defendant shot and killed a fourth Marshal.** The defendant's actions were nothing less than "horrific." *Id.* The defendant was _23 years of age_ when the crime was committed, and after serving 49 years, the court granted his motion for compassionate release resulting in a sentence of time served. (emphasis added) (Greene's sentence was reduced in part due to his transformation).[9]

Notably, the defendants in the cases cited above received sentence reductions *in part,* because of the overwhelming evidence of their level of rehabilitation/ transformation. Mr. Hogeland's level of rehabilitation is similar in part, if not more unique to these cases. In fact, most of these defendants have received disciplinary write ups, while Mr. Hogeland has managed to receive none. And unlike Mr. Hogeland, some

---

[9]  *If his sentence is left unchanged, Mr. Hogeland will end up serving more than double the National Average Sentence for Murder in fiscal year 2019, which was approximately 21 years' incarceration. See: (Statistical Information packet Fiscal Year 2019 Seventh Cir. U.S. Sentencing Comm'n, Table 7. Apr. 2020).*

of the defendants in the cases cited above were designated as leaders, had a worse criminal record than him, and not one of them demonstrated any remorse at sentencing for their *horrific* conduct. Allowing Mr. Hogeland's sentence to remain unchanged will result in Mr. Hogeland serving *more than double* the amount of time served by some of the defendants in the cases cited above, who have a similar or worse record than Mr. Hogeland, and who have been found guilty of far worse conduct than Mr. Hogeland. Even though, 3582(C)(1)(A) instructs courts to assess each defendant under an individualized manner, there can be no doubt, after reviewing Mr. Hogeland's extraordinary and compelling circumstances, that a sentence of 50 years under today's climate is way beyond the pale of a sentence that would be considered "significant but not greater than necessary." This perception is clearly supported by the fact, that since the passing of the First Step Act, numerous defendants who have a worse record and who have been found guilty of worse conduct than Mr. Hogeland, continue to receive sentence reductions – even to times served. Thus, Mr. Hogeland respectfully requests that the Court find, similar to other courts, that the sentencing disparities illustrated above, along with the changes in law, and the injustice of his lengthy sentence, when combined with the other factors detailed herein, demonstrate "extraordinary and compelling reasons" warranting a sentence reduction – even to time served. See: *United States v. Conley*, 2021 U.S. Dist. LEXIS 40763 (N.D. ILL. Mar. 4, 2021) ("Several federal courts have considered sentencing disparities, changes in law, and injustices of lengthy sentences when granting compassionate release motions.") (Citing: *Brooker*, 976 F. 3d. at 238 (2nd Cir. 2020); *McCoy*, 981 F. 3d. at 271, 286 (4th Cir. 2020); *United States v. Haynes*, 456 F. Supp. 3d. 496, 514 (E.D. N.Y. 2020); and *United States v. Cano*, 2020 U.S. Dist. LEXIS 239859 (S.D. Fla. Dec. 16, 2020).

## VIII.  3553(a) Factors Weigh in Favor of Granting Mr. Hogeland's Motion for Sentence Reduction.

For substantially the same reasons identified above, the Court should conclude that the 18 U.S.C. 3553(a) factors weigh in favor of reducing Mr. Hogeland's sentence. Mr. Hogeland has served 20 years (adding GTC) in custody. This is a substantial sentence by any measure, especially, when considering that Mr. Hogeland is no longer a threat to the public.[10] Indeed, Mr. Hogeland's prison record makes clear that he is fully

---

[10] *Remarkably, Mr. Hogeland's "Overall Male Pattern Risk Level" reflects "Minimum." This is the lowest risk level available. See: Ex A-38.*

rehabilitated and that the Court's sentence has had the hoped for deterrent effect. Further evidence supporting that Mr. Hogeland is not a danger to the public is his well-developed release plan. Upon release, Mr. Hogeland will reside with his father as his care-taker and as indicated above, he will work as a fulltime plumber for "Tinneny Plumbing & Heating Inc." See: Ex A-17.

Further, and as indicated above, Mr. Hogeland is completely remorseful for his past behavior. Mr. Hogeland in his own words expresses his remorse as follows:

> I thank God that I am before you once again, and I pray that the impact you have made in my life comes across in this letter/motion. I know that ultimately the only thing I can do to change the past is to continue to work on positive changes for the future. I realize the destructive nature of my actions and I am remorseful and repentant of them. How the repercussions of them affected more people than I ever imagined. How selfish, immature, and unthoughtful they truly were . . . My intentions are to continue to try to touch lives in the midst of life's adversities, wherever that may be. I am wholeheartedly thankful for any and all consideration that I may receive and welcome whatever Your Honor decides. See: Ex A-39 (Mr. Hogeland's Letter to the Court).

In light of the aforementioned, the Court should find that the 20 years (adding Good Time Credit) Mr. Hogeland has served "is a long time – long enough to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public." Rodriguez Supra. (E.D. Pa. Apr. 1, 2020). This is especially true in light of the relatively harsher conditions of confinement that Mr. Hogeland had to experience as a result of the pandemic.

As a fully rehabilitated individual, further incarceration cannot be expected to have any additional deterrent effect and is outweighed by the positive contributions Mr. Hogeland can make to society as a minister.

If the Court were to disagree that 20 years is not enough of a punishment, the Court should agree that a "significant" sentence reduction is warranted – one that will not be considered "greater than necessary" and will reflect the offense.

In sum, Mr. Hogeland has clearly transformed himself through education, appropriate programming, religious practice, and by assisting others and staying out of trouble. At this point, and under the circumstances presented above, a 50 year de facto life sentence is no longer necessary. Further, it is worth making the argument that under today's circumstances, an individual who commits the same crime Mr. Hogeland

had committed, will more than likely not receive a 50 year sentence. Thus, the climate as it functions today in our criminal justice system invites the Court to question whether Mr. Hogeland is serving an unusually lengthy sentence. In any event, it is clear based on the evidence presented above that allowing Mr. Hogeland's sentence to remain unchanged will precipitate an unwarranted sentence disparity among defendants with similar or *worse* records who were found guilty of far *worse* conduct than Mr. Hogeland; and if left unchanged, Mr. Hogeland will be serving an unusually lengthy sentence, which in all respect amounts to a death sentence, which under the circumstances presented above, is a punishment that is "greater than necessary."

## CONCLUSION

For the reasons stated above, Mr. Hogeland respectfully requests that the Court grant his motion for compassionate release and impose a sentence of time served, or in the alternative, reduce his sentence to a term the Court deems appropriate.

Eastern District of Pennsylvania,

Friday, June 18, 2021

Submitted by: *James Hogeland*

James Hogeland (59573-066)

FCI Fairton

POBOX 420

Fairton, New Jersey

08320

**EXHIBIT A-1**

REGNO..: 59573-066 NAME: HOGELAND, JAMES

FBI NO..........: 223973AA1          DATE OF BIRTH: 12-28-1961  AGE:  59
ARS1...........: FAI/A-DES
UNIT...........: C                   QUARTERS.....: C01-131L
DETAINERS......: NO                  NOTIFICATIONS: NO

HOME DETENTION ELIGIBILITY DATE: 08-21-2046

THE FOLLOWING SENTENCE DATA IS FOR THE INMATE'S CURRENT COMMITMENT.
THE INMATE IS PROJECTED FOR RELEASE:  02-21-2047 VIA GCT REL


----------------------CURRENT JUDGMENT/WARRANT NO: 010 -----------------------

COURT OF JURISDICTION..........: PENNSYLVANIA, EASTERN DISTRICT
DOCKET NUMBER..................: 05-CR-162
JUDGE..........................: DIAMOND
DATE SENTENCED/PROBATION IMPOSED: 04-22-2008
DATE COMMITTED.................: 07-01-2008
HOW COMMITTED..................: US DISTRICT COURT COMMITMENT
PROBATION IMPOSED..............: NO

            FELONY ASSESS MISDMNR ASSESS  FINES        COSTS
NON-COMMITTED.: $700.00     $00.00       $2,500.00    $00.00

RESTITUTION...:  PROPERTY:  NO  SERVICES:  NO    AMOUNT:  $00.00

----------------------CURRENT OBLIGATION NO: 010 -----------------------
OFFENSE CODE....: 383     21:841 SCH II NON-NARCOTIC
OFF/CHG: 21:841(A)(1),(B)(1)(A)PWITD 50G OR MORE OF METH.CT.1;18:922(G)
         (1) FELON IN POSSESSION OF A FIREARM CT.4;26:5845(A),5861(D) &
         5871 POSSESSION OF AN UNREGISTERED FIREARM CT.5-7; 18:922(K) &
         924(A)(1)(B) POSSESSION OF FIREARM W/OBLITERED SERIAL NUMBER
         CT.8

SENTENCE PROCEDURE.............: 3559 PLRA SENTENCE
SENTENCE IMPOSED/TIME TO SERVE.:  240 MONTHS
TERM OF SUPERVISION............:   10 YEARS
DATE OF OFFENSE................: 07-15-2004

REGNO..: 59573-066 NAME: HOGELAND, JAMES

------------------------CURRENT OBLIGATION NO: 020 ------------------------
OFFENSE CODE....:  130     18:924(C) FIREARMS LAWS          FSA INELIGIBLE
OFF/CHG: 18:924(C)(1) POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG
         TRAFFICKING CRIME CT.2-3

  SENTENCE PROCEDURE............: 3559 PLRA SENTENCE
  SENTENCE IMPOSED/TIME TO SERVE.:  360 MONTHS
  TERM OF SUPERVISION...........:    10 YEARS
  DATE OF OFFENSE...............: 07-15-2004

------------------------CURRENT COMPUTATION NO: 010 ------------------------

COMPUTATION 010 WAS LAST UPDATED ON 04-28-2020 AT DSC AUTOMATICALLY
COMPUTATION CERTIFIED ON 08-18-2008 BY DESIG/SENTENCE COMPUTATION CTR

THE FOLLOWING JUDGMENTS, WARRANTS AND OBLIGATIONS ARE INCLUDED IN
CURRENT COMPUTATION 010: 010 010, 010 020

DATE COMPUTATION BEGAN..........: 04-22-2008
AGGREGATED SENTENCE PROCEDURE...: AGGREGATE GROUP 800 PLRA
TOTAL TERM IN EFFECT............:  600 MONTHS
TOTAL TERM IN EFFECT CONVERTED..:   50 YEARS
AGGREGATED TERM OF SUPERVISION..:   10 YEARS
EARLIEST DATE OF OFFENSE........: 07-15-2004

JAIL CREDIT.....................:  FROM DATE    THRU DATE
                                   07-15-2004   04-21-2008

G0002       MORE PAGES TO FOLLOW . . .

FAIJM 540*23 *      SENTENCE MONITORING      *    06-12-2021
PAGE 003 OF 003 *      COMPUTATION DATA      *    13:05:56
                        AS OF 06-12-2021

REGNO..: 59573-066 NAME: HOGELAND, JAMES


TOTAL PRIOR CREDIT TIME........: 1377
TOTAL INOPERATIVE TIME.........: 0
TOTAL GCT EARNED AND PROJECTED..: 2700
TOTAL GCT EARNED...............: 864
STATUTORY RELEASE DATE PROJECTED: 02-21-2047
ELDERLY OFFENDER TWO THIRDS DATE: 11-14-2037
EXPIRATION FULL TERM DATE.......: 07-14-2054
TIME SERVED....................:     16 YEARS     10 MONTHS     29 DAYS
PERCENTAGE OF FULL TERM SERVED..:  33.8
PERCENT OF STATUTORY TERM SERVED:  39.6

PROJECTED SATISFACTION DATE.....: 02-21-2047
PROJECTED SATISFACTION METHOD...: GCT REL

REMARKS.......: INITIAL COMP
               04-28-20 FSA DCT UPDATE 4/STH.


G0000      TRANSACTION SUCCESSFULLY COMPLETED

IN THE UNITED STATES DIST

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

JAMES HOGELAND

CASE # 05-00162-01

- VS -

UNITED STATES OF AMERICA

HONORABLE DISTRICT COURT

JUDGE PAUL S. DIAMOND

## MOTION TO MODIFY SENTENCE
## PURSUANT TO 18 U.S.C. 3582 (c)(1)(A)

COMES THE DEFENDANT JAMES HOGELAND, PRO-SE IN THE CASE. I HUMBLY AND RESPECTFULLY BEG THE COURTS PATIENCE AND LIENIANCY, AS I AM UNSKILLED IN THE LAW, AND WE ARE IN EXTREMELY DIFFICULT TIMES IN THE INSTITUTION AND IN THE WORLD.

THE ORIGIONAL "REQUEST TO STAFF" TO THE WARDEN WENT UNADDRESSED. (EXHIBIT A)

I HAVE BEEN INCARCERATED FOR MY CRIMES SINCE JULY 15th 2004. WITH 16 YEARS IN, I PRAY THE COURT TAKES THE TIME TO LOOK AT MY RECORD AND WEIGH THE POSSIBILITY OF REDUCING MY SENTENCE THROUGH EXTRAORDINARY AND COMPELLING CIRCUMSTANCES.

IN THE SUPERSEDING INDICTMENT THE CHARGES WERE ENHANCED WITH 851 ENHANCEMENTS DOUBLING THE ORIGIONAL CHARGES. WITH 924 (c) CHARGES BEING ADDRESSED DIFERENTLY NOW, I PERCIEVABLY COULD HAVE RECIEVED LESS TIME IF SENTENCED NOW.

EVEN THOUGH AT THE BEGINNING of TRIAL I ADMITTED MY GUILT, I FEEL I WAS PUNISHED for EXERCISING MY RIGHTS. NEVER EVEN RECIEVED CREDIT for ACCEPTANCE of RESPONSIBILITY. IN TOTALITY THOUGH, IF I WOULD HAVE KEPT THE PLEA, I WOULD BE GETTING OUT NOW.

I AM CURRENTLY 58 YEARS OLD, AND MAY BE ON THE LOWER END of THE BOP's GUIDLINES. BUT SEEM TO BE RIGHT IN THE MIDDLE of COVID-19's AFFECTED RANGE. I WAS TAKING MEDICATION for HIGH-CHOLESTEROL, BUT HAVE BEEN TRYING TO ADDRESS THAT WITH DIET AND EXERCISE. I HAVE SOME DIFFICULTY BREATHING, WITH CHRONIC CONGESTION, AND SLEEP APNEA. I AM SUPPOSED TO DO A SLEEP STUDY for A CPAP MACHINE, BUT THAT SEEMS TO BE ON HOLD WITH THE VIRUS TAKING PRECEDENT (WE HAVE BEEN ON LOCK-DOWN) I SMOKED for 30 YEARS BEFORE I WAS INCARCERATED. SNORTED DRUGS for 20 YEARS (APPROX), AND WAS ON A HANDFUL of JOBS THAT WERE SHUT DOWN BECAUSE of ASBESTOS EXPOSURE WHEN I WAS AN APRENTICE PLUMBER IN THE 80's

ALTHOUGH NEVER DIAGNOSED BY THE BOP, I AM SURE
THERE ARE UNDERLYING PROBLEMS THAT WOULD MAKE
ME VULNERABLE UNDER CURRENT CONDITIONS.

RELEASE PLAN

MY FATHER WOULD TRUELY APPRECIATE ME LIVING WITH
HIM. HE IS 86 YEARS OLD AND ALONE SINCE MY
MOTHERS PASSING. (EXHIBIT B) FROM THERE I COULD
WALK TO WORK, AS MY PREVIOUS BOSS GRACIOUSLY
SAID HE WOULD RE-HIRE ME. (EXHIBIT C)
* NOT EVEN A FULL BLOCK 310 FOUNTAIN ST TO
                            404 FOUNTAIN ST *

* MY BROTHER ALSO LIVES LOCAL AND EXTENDED
HOSPITALITY TO ME TOO. (EXHIBIT D)

WHEN I FIRST GOT LOCKED-UP, SOMEONE OFFERED
ME A BIBLE, I ACCEPTED IT, BUT THOUGHT THAT 12
YEARS OT CATHOLIC SCHOOLING WAS ALL I NEEDED.
I SOON FOUND OUT HOW WRONG I WAS. I WAS
EVEN MORE AMAZED AT JUST HOW MUCH OT A
"GOOD PERSON" I WASN'T.
FINDING SOME CORRESPONDANCE COURSES, AT FIRST
TO HELP OCCUPY MY TIME, I AM AMAZED AT HOW
MUCH MORE THEY HAVE DONE. WHEN I GOT TO F.DC
PHILLY I CONTINUED TO DO THEM. (EXHIBIT ) I FOUND
OUT ABOUT THE SUICIDE COMPANION PROGRAM AND
VOLUNTEERED FOR THAT (EXHIBIT )

ALONG WITH THAT, THEY FOUND OUT THAT I AM A UNION PLUMBER. THE ASKED ME TO CONVERT A COUPLE OF CELLS FOR OBSERVATION. REMOVING SINK & TOILETS & REPLACING THEM WITH STAINLESS STEEL. (EXHIBIT) I APPRECIATED THE WORK AND ALSO FEELING PRODUCTIVE. I ALSO SAW THE OPPORTUNITY TO AND VOLUNTEERED FOR NUMEROUS RECREATION ACTIVITIES. (EXHIBIT) THEY ALSO ASKED ME TO MENTOR SOMEONE WHO WAS PRONE TO CUTTING HIMSELF. AND WE BECAME CELLIES.

AFTER SENTENCING AND LEAVING FDC PHILA I ARRIVED AT U.S.P. LEWISBURG. THEY WERE APPROACHING CONVERSION TO THE S.M.U. PROGRAM. I WAS TOLD BY THE UNIT TEAM TO "NOT GET COMFORTABLE" AS THE MAJORITY OF INMATES WERE SLATED TO BE RELOCATED. AFTER FINDING OUT MY PLUMBING EXPERIENCE AND CHECKING WITH STAFF FROM PHICA. THEY ASKED ME TO BECOME A CADRE WORKER AND SOON AFTER "EMERGENCY PLUMBER". WE CHANGED OUT HUNDREDS OF SINKS & TOILETS AND STAYED BUSY KEEPING THE 85 YEAR OLD INSTITUTION WORKING. I ALSO CONTINUED TO BE A SUICIDE COMPANION THERE (EXHIBIT)

THE CHAPLAIN THERE WANTED TO INSTITUTE A BIBLE STUDY PROGRAM TO THE SMU AND ASKED A FEW OF US TO TAKE IT SO WE COULD HELP GRADE TESTS. WE DID ASSIST IN HELPING QUITE A FEW PEOPLE ACHIEVE BACHELORS DEGREES. BUT AS THAT CHAPLAIN LEFT IT DIDN'T TAKE ROOT IN THE SMU (EXHIBIT)

WE DID INITIATE ANOTHER COURSE, AN INTERNATIONAL COURSE WITH DVD's. IT NOT ONLY TOOK ROOT, IT HAS FLOURISHED. NUMEROUS MEN HAVE BEEN BLESSED TO RECIEVE ASSOCIATE DEGREES. THERE HAVE BEEN A FEW TO TAKE IT TO BACHELORS. IT HAS REACHED 5 DIFFERENT INSTITUTIONS AND IS IN THE PROCESS OF BECOMING EVIDENCE BASED AND APPROVED FOR THE FIRST STEP ACT. (EXHIBIT )

I COULD SAY THAT I WAS BLESSED AGAIN. AS I NEEDED TO GET CLOSER TO MY FAMILY, THE TRANSFER WENT THROUGH WITHOUT A HITCH. (TO F.C.I. FAIRTON) I GOT INTO UNICOR ALMOST IMMEDIATLY AND THEN THE QUALITY CONTROL DEPT. EDUCATION/ UNICOR PRESENTED AN OPPORTUNITY TO TAKE THE ASQ CERTIFIED QUALITY IMPROVEMENT ASSOCIATE TEST, WHICH TRUELY WAS A BLESSING. HALF OF US PASSED AND TRUTHFULLY I WOULD LOVE TO BE ABLE TO PURSUE THIS FURTHER. (EXHIBIT )

THE CHAPLAIN HERE WAS ALSO INTERESTED IN THE INTERNATIONAL MINISTRY AND WE HAVE GOTTEN THROUGH THE ASSOCIATES AND JUST STARTED THE BACHELORS WHEN THE VIRUS HIT.

THROUGH ALL OF THIS, I HAVE NEVER RECIEVED AN INFRACTION, AND RECENTLY MADE FINAL PAYMENT ON MY FINES.

ONCE AGAIN I WOULD LIKE TO THANK THE COURTS FOR ALL OF YOUR PATIENCE AND TIME. I TRIED TO BE AS CONCISE AS POSSIBLE EXPLAINING SOME OF THE EXHIBITS PERTINANT TO THE LAST 16 YEARS

IN CLOSING, I WOULD LIKE TO ADD. AT ONE TIME I MAY HAVE BEEN of THE IMPRESSION THAT MINE WAS A VICTIMLESS CRIME. I REALIZE NOW THAT COULDN'T BE FURTHER FROM THE TRUTH. THE LIFESTYLE THAT I WAS LIVING AND PROMOTING TEARS AT THE VERY FABRIC of SOCIETY. ALTHOUGH WE ALL DO NEED "HELP" IN ACHIEVING AND REALIZING THE AMERICAN DREAM. THAT HELP HAS TO COME FROM ON HIGH AND OTHERS, NOT FROM ANY DRUG. FOR THIS I AM TRUELY SORRY. IN REPENTING FROM MY FORMER WAYS, I AM of A BELIEF THAT ULTIMATELY THE BEST WAY TO MAKE AMMENDS IS IN YOUTH MINISTRY. IF (WHEN) THAT DOOR IS OPENED, I WILL FEEL THAT TRUELY I HAVE COME A FULL 180. UNTIL THAT TIME I WILL CONTINUE TO DO WHATEVER GOD PUTS BEFORE ME, AND PRAY FOR THE BLESSINGS of FERTILE SOIL TO DROP HIS SEEDS.

THANK YOU ONCE AGAIN
AND GOD BLESS YOU

James Hogeland
59573-066

# UNICOR
## U.S. DEPARTMENT OF JUSTICE

INMATE REQUEST TO STAFF

| TO: (NAME AND TITLE OF STAFF MEMBER) MR. THOMAS E. ISERGIAMI / WARDEN | DATE: 9/10/20 |
|---|---|
| NAME: JAMES HOGELAND | REGISTER NO. 59573-066 |
| WORK ASSIGNMENT: UNICOR/FINAL QA | UNIT: C-LEFT CELL 131 |

SUBJECT: Briefly state your question or concern and the solution you are requesting. Continue on back, if necessary. Your failure to be specific may result in no action being taken. If necessary, you will be interviewed in order to successfully respond to your request.

THIS IS A PLEA TO THE WARDEN FOR COMPASSIONATE RELEASE. I HAVE SOME MEDICAL ISSUES, SLEEP APNEA, CRONIC CONGESTION, HIGH CHOLESTEROL, WAS SUBJECTED TO ASBESTOS IN THE 1980's. I AM 58 YEARS OLD AND VULNERABLE AT LEAST UNDER THE CURRENT CONDITIONS. I BELIEVE MY IMPECABLE RECORD WARRANTS AT LEAST CONCIDERATION, AND FURTHER EXAMINATION. I THANK YOU AND WOULD GLADLY PROVIDE ANY INFORMATION TO ASSIST AND EXPEDITE THIS PROCESS...

JAMES HOGELAND 59573-066
(OVER)

( Do not write below this line )

| Signature staff member | Date |
|---|---|
| | |

Record Copy - File;  Copy - Inmate
(this form may be replicated via WP)

This form replaces BP-148.070 dated Oct 86 and BP-s148.070

Apr-94

**FILE IN SECTION 6 UNLESS APPROPRIATE FOR PRIVACY FOLDER**

I HAVE BEEN INCARCERATED for 16+ YEARS. IN AUGUST of 2008 I WAS SENT TO LEWISBURG AND ASSISTED IN THE CONVERSION TO A SMU PROGRAM. I STAYED THERE AS THE ON CALL EMERGENCY PLUMBER UNTIL APRIL 2018. WHILE THERE I RECIEVED A BACHELORS DEGREE IN BIBLICAL STUDIES, AND FACILITATED OTHERS TO ALSO. I HAVE ALSO COMPLETED NUMEROUS CORROSPONDANCE COURSES AND HAVE DONE MY BEST TO UTILIZE THE TIME I HAVE BEEN GIVEN. TO NOT ONLY BE A BETTER INFLUENCE, BUT TO HELP OTHERS TOO ALSO. SINCE I HAVE BEEN AT FAIRTON. I WAS BLESSED TO GET RIGHT INTO UNICOR. ALSO TO TAKE THE ASQ TEST THROUGH EDUCATION/ UNICOR AND PASS. I WOULD LIKE TO FURTHER THIS CAREER OPTION WHEN RELEASED, BUT if NOT I DO HAVE A STANDING OFFER WITH MY OLD EMPLOYER. HE HAS SENT A LETTER ALSO MY FATHER WITH RESIDENCE. WITH THIS I HAVE A PLACE of RESIDENCE, PROMISE of EMPLOYMENT IN GREAT PROXIMITY, AND A PLAN. I THANK YOU IN ADVANCE for ANY AND All CONCIDERATION IN THIS COMPASSIONATE RELEASE. 3582 (c)(1)(A), AND WOULD VALUE THE OPPORTUNITY TO BECOME A MORE PRODUCTIVE MEMBER of SOCIETY. AND POSSIBLY ALSO BEGIN TO REVERSE THE INFLUENCES of PREVIOUS BAD DECISIONS

THANK YOU

James Hogeland 59573-066

REGISTER NO: 59573-066      NAME..: HOGELAND
FORMAT.....: TRANSCRIPT     RSP OF: FAI-FAIRTON FCI

FUNC: PRI

-------------------------- EDUCATION INFORMATION --------------------------
FACL ASSIGNMENT DESCRIPTION                    START DATE/TIME STOP DATE/TIME
FAI  ESL HAS    ENGLISH PROFICIENT             07-07-2008 1301 CURRENT
FAI  GED HAS    COMPLETED GED OR HS DIPLOMA     10-27-2008 1434 CURRENT

-------------------------- EDUCATION COURSES --------------------------
| SUB-FACL | DESCRIPTION | START DATE | STOP DATE | EVNT | AC | LV | HRS |
|---|---|---|---|---|---|---|---|
| FAI | CERT QUALITY IMPROVEMENT ASSOC | 02-15-2019 | 05-02-2019 | P | C | P | 16 |
| LEW | USP REC PLYOMETRICS CLASS | 09-06-2017 | 11-08-2017 | P | C | P | 2 |
| LEW | INDEPEND.COLLEGE CORRESPONENCE | 06-14-2014 | 01-14-2016 | P | C | P | 520 |
| LEW | BASIC FITNESS 2014 | 03-23-2014 | 03-23-2014 | P | C | P | 10 |
| LEW | INDEPEND.COLLEGE CORRESPONENCE | 09-05-2010 | 09-05-2013 | P | C | P | 720 |
| LEW | BEG UNFIT TO FIT CLASS 2011 | 04-03-2011 | 05-23-2011 | P | C | P | 7 |
| LEW | ELLIPTICAL A 2011 | 04-03-2011 | 05-23-2011 | P | C | P | 7 |
| LEW | SPINNING CLASS | 07-27-2009 | 08-21-2009 | P | C | P | 16 |
| PHL M | 5N TEETH WELLNESS CLASS | 02-05-2008 | 02-05-2008 | P | C | P | 1 |
| PHL M | 5N HEART MONITOR | 04-15-2008 | 04-15-2008 | P | C | P | 2 |
| PHL M | 5N THE EAR CLASS | 01-09-2008 | 01-09-2008 | P | C | P | 1 |
| PHL M | 7S THE GLANDS & HORMONES CLASS | 11-17-2007 | 11-17-2007 | P | C | P | 1 |
| PHL M | BODY FAT % & BODY MASS INDEX | 03-14-2007 | 03-14-2007 | P | C | P | 2 |
| PHL M | 7S THE HEART CLASS | 10-17-2007 | 10-17-2007 | P | C | P | 1 |
| PHL M | 7S THE BRAIN CLASS | 08-15-2007 | 08-15-2007 | P | C | P | 1 |
| PHL M | BODY FAT % & BODY MASS INDEX | 09-12-2006 | 09-12-2006 | P | C | P | 1 |
| PHL M | 7S TEETH WELLNESS CLASS | 05-16-2007 | 05-16-2007 | P | C | P | 1 |
| PHL M | 7S FOOD MACHINE WELLNESS CLASS | 12-12-2006 | 12-12-2006 | P | C | P | 1 |
| PHL M | INTRO TO HIGH BLOOD PRESSURE | 02-14-2007 | 02-14-2007 | P | C | P | 1 |
| PHL M | 7S THE EAR CLASS | 01-16-2007 | 01-16-2007 | P | C | P | 1 |
| PHL M | 7S STRETCHING CLASS | 10-17-2006 | 10-17-2006 | P | C | P | 1 |
| PHL M | 7S THE MUSCLES & BONES CLASS | 07-17-2006 | 07-17-2006 | P | C | P | 1 |
| PHL M | 7S THE FOOD MACHINE CLASS | 06-20-2006 | 06-20-2006 | P | C | P | 1 |
| PHL M | 7S TEETH WELLNESS CLASS | 06-14-2006 | 06-14-2006 | P | C | P | 1 |
| PHL M | 7S THE BRAIN CLASS | 05-14-2006 | 05-14-2006 | P | C | P | 1 |
| PHL M | 7S THE HEART CLASS | 05-13-2006 | 05-13-2006 | P | C | P | 1 |
| PHL M | WELLNESS CLASS | 04-06-2006 | 04-06-2006 | P | C | P | 1 |
| PHL M | VOLLEYBALL OFFICIAL TRAINING | 03-05-2006 | 03-05-2006 | P | C | P | 2 |
| PHL M | 7S HEART MONITOR | 03-13-2006 | 03-13-2006 | P | C | P | 2 |
| PHL M | BLOOD SUGAR CLASS | 02-26-2006 | 02-26-2006 | P | C | P | 1 |

G0000      TRANSACTION SUCCESSFULLY COMPLETED

# CERTIFICATE OF COMPLETION

## USP Lewisburg, Pennsylvania

### JAMES HOGELAND

has completed the

# DRUG EDUCATION PROGRAM

and is awarded this certificate
this 22nd day of March 2011

*S. Dyroff*
T. Dyroff
*Drug Treatment Specialist*

*L. Karpen*
L. Karpen, Ph.D.
*Chief Psychologist*

# THIS CERTIFIES THAT

## *James Hogeland*

has successfully completed the course and examination for

## 10-HOUR GENERAL INDUSTRY SAFETY & HEALTH

February 03 & 10, 2011

Introduction to OSHA
Lockout/Tagout
PPE

Personal Protection Equipment
Means of Egress
Walking/Working Surfaces

Flammable and Combustible Liquids Electrical
Machine Guarding
Hazard Communication

Safety and Health Instructors

# Certificate of Achievement

## awarded to

## Hogeland #59573-066

## for

### Plyometric Training & Fitness (USP Lewisburg)

_M. Cost / M__
Signature

10-11-2017
Date

# Certificate of Completion

## James Hogeland

has completed a 16 hour group in

## Mindfulness-Based Stress Reduction

A stress management program including meditation and yoga,
FDC Philadelphia
Monday, March 26, 2007.

*Dana P. Reinhold, PhD*

Dana P Reinhold, Ph.D.
Mental Health Unit Psychologist

EXHIBIT 4

# Award of Distinction

## You Did It!

### James Hogeland

Federal Detention Center, Philadelphia, PA
For Volunteering as a Recreation Aide
for the King Holiday Weekend
Total of 4 hours

_L. McAdoo, Recreation Specialist_

Recreation Department

_January 19, 2008_

YA655 © COPYRIGHT, 2001, HAYES SCHOOL PUBLISHING CO., INC., PITTSBURGH, PA

# Certificate of Completion

THIS CERTIFICATE VERIFIES THAT

## JAMES HOGELAND

HAS SUCCESSFULLY COMPLETED:

**CONFINED SPACE ENTRY-GENERAL INDUSTRY AND CONSTRUCTION**

**LADDER SAFETY**

**FALL PROTECTION**

in accordance with federal, state/provincial, local, and company requirements

SEPTEMBER 20, 2017

R. HICKS, ESCA, CESCO, SSH C/G
R. DRICK, SCS





OSHA®
COMPLIANT TRAINING

# CERTIFICATE OF PARTICIPATION

THIS CONFIRMS THAT

## JAMES HOGELAND

participated in a process group for the book

*Healing for Damaged Emotions*

by David A. Seamands

at USP Lewisburg

T. LEININGER, CHAPLAIN
3/20/2018



# Award of Distinction

awarded to:

## James Hogeland

Federal Detention Center, Philadelphia, PA
For Volunteering 112 hours as Recreation Aid
for the Recreation Department during January 2007

January 2007
Date

L. McAdoo, Recreation Specialist

**EXHIBIT A-4**

# UNICOR WORK PERFORMANCE EVALUATION RECORD

Name ___HOGELAND, JAMES___     Unit:  Factory     Register Number ___59573-066___

_____475_____                _____1101_____               ____209.687.022____
INSTITUTIONAL CODE              INDUSTRY CODE          WORK ASSIGNMENT DOT CODE

M  M   D   D   Y   Y                                       M  M   D   D   Y   Y
0| 7| 0| 1| 1| 9                                          1| 2| 3| 1| 1| 9
EVALUATION BEGIN DATE                                      EVALUATION END DATE

Rating Scale: 1 = Much Worse Than Average          2 = Worse Than Average        3 = Average

          4 = Better Than Average                          5 = Much Better Than Average

( J.H. )                                                   Comments: _____
Inmates Initials                                                     _____
                                                                     _____
                                                                     _____
                                                                     _____

( OM )          4   5   4   5   5   ___   ___      ___ 23
Supervisors Inmates   (Safety, Quality Assurance, Personal Conduct/Hygiene, Punctuality/Productivity, Compliance With Work Standard)     Total

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Name ___HOGELAND, JAMES___     Unit:  Factory     Register Number ___59573-066___

_____475_____                _____1101_____               ____209.687.022____
INSTITUTIONAL CODE              INDUSTRY CODE          WORK ASSIGNMENT DOT CODE

M  M   D   D   Y   Y                                       M  M   D   D   Y   Y
0| 1| 0| 1| 2| 0                                          0| 6| 3| 0| 2| 0
EVALUATION BEGIN DATE                                      EVALUATION END DATE

Rating Scale: 1 = Much Worse Than Average          2 = Worse Than Average        3 = Average

          4 = Better Than Average                          5 = Much Better Than Average

( J.H. )                                                   Comments: _____
Inmates Initials                                           AWEsome Job _____
                                                                     _____
                                                                     _____

( OM )          2   5   5   5   5   ___   ___      ___ 24
Supervisors Inmates   (Safety, Quality Assurance, Personal Conduct/Hygiene, Punctuality/Productivity, Compliance With Work Standard)     Total

ORIGINAL - Stays with UNICOR
COPIES - One Copy To Case Manager After Every Evaluation Period

FPI - 44
REV - 11/95



## ASQ

The Global Voice of Quality™

Certified Quality Improvement Associate

| Certificate Number | Date Issued |
|---|---|
| 13934 | 3/8/2019 |

March 27, 2019

65767030
James H. Hogeland
UNICOR-FPI
PO Box 420
Fairton, NJ 08320-0420

Dear James H. Hogeland:

CONGRATULATIONS! The Certification Board is pleased to announce that you have passed the written examination for the ASQ Certified Quality Improvement Associate Certification. You have reached an important milestone in your professional development.

Certification is not a license. It is peer recognition of proficiency in the prescribed body of knowledge. Please refer to your certification in terms which are consistent with the legal requirements and use of certification in the location in which you reside. We recommend that you refer to yourself as an "ASQ Certified Quality Improvement Associate." It is very important that you associate the Society with your certification.

Enclosed is your certificate and ASQ Code of Ethics. As a certified individual, the ASQ Code of Ethics should serve as your professional guide. Please review this information and call ASQ Headquarters if there are any discrepancies.

You can be rightfully proud of your certification as recognition of your professional knowledge by your peers in a professional society.

We look forward to your continued participation in the Society.

Sincerely,

Alan M. Bell, Chair
ASQ Certification Board

EXHIBIT C



# American Society for Quality

## James H. Hogeland

has satisfactorily fulfilled the requirements established
by the Society for professional attainment in

### Quality Improvement

and is, therefore, certified by the Society as a

## Certified Quality Improvement Associate

Certification Number 13934

Certification Date 3/8/2019



Chair, Certification Board





Chair

# CRS Recycling

## Performance of Services

### CERTIFICATE

*Awarded to*

*James Hogeland*

The above name has successfully achieved this certificate on the proper way to handle recycling and refurbished material Sorting, Testing, Packing and Safety Procedure at Fairton UNICOR.

On this date of: June 01, 2018

Factory Manager, P. Persaud

QA. Representative, D. Siddiqui



**U.S. Department of Justice**
Federal Bureau of Prisons
Federal Correctional Institution

MEMORANDUM

Fairton, New Jersey 08320

Date: 12/3/2020

REPLY TO THE
ATTENTION OF: Mr. O. Marti
Unicor Quality Assurance Manager
856-453-4179

Subject: James Hogeland
Reg. Number : # 59573-066

To: C-Unit Team

This memo will serve as a progress report for inmate Hogeland registration number 59573-066. Mr. Hogeland currently holds the title of Final Quality Inspector and has worked in Unicor at FCI Fairton since May 2018 to present. During this time he has actively participated in all training opportunities relating to Quality Assurance and has excelled in all areas. His skill set would be an asset to any company. He shows interest in his work and has dedicated himself to improving this skill.

Inmate Hogeland has gained the respect of his co-workers do to his knowledge and skill as the Final Quality Inspector. He is a good example to other workers. He brings a positive attitude and desire to learn within the work environment. He is respectful to authority and never questions directives. He is easy to work with and can be depended upon to complete tasks on time.

Along with being an excellent worker, inmate Hogeland has helped Unicor through his ability to train and lead other employees in their job duties. Although not a requirement, he has done this solely on his own initiative. While supervising inmate Hogeland, I've found him to be a hard working individual with an excellent attitude. I would be very comfortable hiring this individual in the future and feel he will be a productive member of society.

Signed: _____

Date: 12/3/2020

O. Marti, Quality Assurance Manager
Unicor FPI, Fairton

**EXHIBIT A-8**

December 07, 2020

RE:     James, Hogeland #59573-066

To whom it may concern,

Mr. Hogeland currently is employed with UNICOR at FCI Fairton since May 2018. Mr. Hogeland current position is a finial Quality Assurance personal and is responsible for ensuring that all finish production are to customer satisfaction. Mr. Hogeland is also responsible for material coming into the factory and shipping out the factory. Staff trust Mr. Hogeland with documenting correct information as a receiving clerk for UNICOR. Mr. Hogeland continue to be an assets to UNICOR operation with his attention to details.

If you should have any questions regarding this letter please feel free to contact me.

Sincerely,

Prem Persaud

**EXHIBIT A-9**



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HOGELAND, JAMES  59573-066



| | | | |
|---|---|---|---|
| Facility: | FAI FAIRTON FCI | Custody Level: | IN |
| Name: | HOGELAND, JAMES | Security Level: | MEDIUM |
| Register No.: | 59573-066 | Proj. Rel Date: | 02-21-2047 |
| Quarters: | C01-131L | Release Method: | GCT REL |
| Age: | 58 | DNA Status: | PHL02469 / 06-03-2011 |
| Date of Birth: | 12-28-1961 | | |

### Offenses and Sentences Imposed

| Charge | Terms In Effect |
|---|---|
| 21:841(A)(1),(B)(1)(A)PWITD 50G OR MORE OF METH.CT.1;18:922(G) (1) FELON IN POSSESSION OF A FIREARM CT.4;26:5845(A),5861(D) & 5871 POSSESSION OF AN UNREGISTERED FIREARM CT.5-7; 18:922(K) & 924(A)(1)(B) POSSESSION OF FIREARM W/OBLITERED SERIAL NUMBER CT.8 | 240 MONTHS |
| 18:924(C)(1) POSSESSION OF A FIREARM IN FURTHERANCE OF A DRUG TRAFFICKING CRIME CT.2-3 | 360 MONTHS |

Date Sentence Computation Began:  04-22-2008
Sentencing District:  PENNSYLVANIA, EASTERN DISTRICT

| Days FSGT / WSGT / DGCT | Days GCT or EGT / SGT | Time Served | + Jail Credit - InOp Time |
|---|---|---|---|
| 0 / 0 / 0 | 864 | Years: 16 Months: 5 Days: 3 | + 1377   JC - 0   InOp |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

### Program Plans

Inmate Hogeland arrived at FCI Fairton on April 16, 2018.  During his initial classification and subsequent reviews it was recommended he participate in educational programs, maintain clear conduct and maintain a high level of sanitation standards.

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FAI | UNICOR | UNICOR | 09-02-2019 |

### Work Assignment Summary

Inmate Hogeland receives outstanding work performance evaluations based upon his overall job proficiency.

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| FAI | ESL HAS | ENGLISH PROFICIENT | 07-07-2008 |
| FAI | GED HAS | COMPLETED GED OR HS DIPLOMA | 10-27-2008 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| FAI | C | CERT QUALITY IMPROVEMENT | 02-15-2019 | 05-02-2019 |
| LEW | C | USP REC PLYOMETRICS CLASS | 09-06-2017 | 11-08-2017 |
| LEW | C | INDEPEND.COLLEGE | 06-14-2014 | 01-14-2016 |
| LEW | C | BASIC FITNESS 2014 | 03-23-2014 | 03-23-2014 |
| LEW | C | INDEPEND.COLLEGE | 09-05-2010 | 09-05-2013 |
| LEW | C | BEG UNFIT TO FIT CLASS 2011 | 04-03-2011 | 05-23-2011 |
| LEW | C | ELLIPTICAL A 2011 | 04-03-2011 | 05-23-2011 |
| LEW | C | SPINNING CLASS | 07-27-2009 | 08-21-2009 |

### Education Information Summary

Inmate Hogeland participated in numerous programs during his incarceration.  See education data.



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HOGELAND, JAMES 59573-066

SEQUENCE: 00215763

Report Date: 12-16-2020

## Discipline Reports

| Hearing Date | Prohibited Acts |
|---|---|

**\*\* NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS \*\***

## Discipline Summary

Inmate Hogeland has maintained clear conduct during his incarceration.  He interacts appropriately with staff and is not considered to be a management concern at this time.

## ARS Assignments

| Facl | Assignment | Reason | Start | Stop |
|---|---|---|---|---|
| FAI | A-DES | TRANSFER RECEIVED | 04-16-2018 | CURRENT |
| LEW | A-DES | OTHER AUTH ABSENCE RETURN | 08-29-2014 | 04-16-2018 |
| LEW | A-DES | TRANSFER RECEIVED | 02-19-2013 | 08-29-2014 |
| LEW | A-DES | TRANSFER RECEIVED | 05-03-2012 | 02-19-2013 |
| LEW | A-DES | TRANSFER RECEIVED | 09-24-2008 | 05-23-2011 |
| FTD GP | A-DES | US DISTRICT COURT COMMITMENT | 07-01-2008 | 08-12-2008 |

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 04-16-2018 |
| CARE1-MH | CARE1-MENTAL HEALTH | 06-22-2010 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| PAPER | LEGACY PAPER MEDICAL RECORD | 10-30-2018 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 04-19-2018 |
| YES F/S | CLEARED FOR FOOD SERVICE | 04-19-2018 |

## Current PTP Assignments

| Assignment | Description | Start |
|---|---|---|

NO ASSIGNMENTS

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| ED COMP | DRUG EDUCATION COMPLETE | 03-22-2011 |

## Physical and Mental Health Summary

Inmate Hogeland is assigned regular duty status with no medical restrictions.  He should be fully employable after his release from custody.

## FRP Details

| Most Recent Payment Plan |
|---|

**FRP Assignment:** **NO OBLG** **FINANC RESP-NO** **Start: 01-24-2020**

Inmate Decision: **AGREED** **$1,925.00** Frequency: **SINGLE**
Payments past 6 months: **$0.00** Obligation Balance: **$0.00**

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $700.00 | $350.00 | IMMEDIATE | EXPIRED |
| | | **\*\* NO ADJUSTMENTS MADE IN LAST 6 MONTHS \*\*** | | | |
| 2 | FINE | $2,500.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | **\*\* NO ADJUSTMENTS MADE IN LAST 6 MONTHS \*\*** | | | |

## Financial Responsibility Summary

Inmate Hogeland has no financial obligation owed to the courts.

## Release Planning



## Summary Reentry Plan - Progress Report
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HOGELAND, JAMES 59573-066

SEQUENCE: 00215763
Report Date: 12-16-2020

Inmate Hogeland plans to return to the Eastern District of Pennsylvania upon his release from custody.

## General Comments

Overall, Inmate Hogeland is not a management concern and he participated in numerous programs during his incarceration. He interacts appropriately with staff and other inmates.

Mr. O. Marti, Unicor Quality Assurance Manager wrote the following on 12/3/2020:

Mr. Hogeland currently holds the title of Final Quality Inspector and has worked in Unicor at FCI Fairton Since May 2018 to present. During this time, he has actively participated in all training opportunities relating to Quality Assurance and has excelled in all areas. His skill set would be an asset to any company. He shows interest in his work and has dedicated himself to improving this skill.

Inmate Hogeland has gained the respect of his co-workers due to his knowledge and skill as the Final Quality Inspector. He is a good example to other workers. He brings a positive attitude and desire to learn within the work environment. He is respectful to authority and never questions directives. He is easy to work with and can be depended upon to complete tasks on time.

Along with being an excellent worker, Inmate Hogeland has helped Unicor through his ability to train and lead other employees in their job duties. Although not a requirement, he has done this solely on his own initiative. While supervising inmate Hogeland, I've found him to be a hard working individual with an excellent attitude. I would be very comfortable hiring this individual in the future and feel he will be a productive member of society.



**Summary Reentry Plan - Progress Report**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HOGELAND, JAMES 59573-066

SEQUENCE: 00215763
Report Date: 12-16-2020

Name: HOGELAND, JAMES
Register Num: 59573-066
Age: 58
Date of Birth: 12-28-1961
DNA Status: PHL02469 / 06-03-2011

Inmate (HOGELAND, JAMES, Register Num: 59573-066)

Date

Chairperson

Date

Case Manager

Date

To whom it MAY CONCERN

I AM WRITING THIS LETTER FOR MY SON
James Hogeland 59573-066
AN INMATE F.C.I. FAIRTON NJ

He is Petitioning FOR EARLY RELESE OR
PAROLE.
IF such where Possible he would
Need A Place to Live witch would
be with me at My home in Phila. PA
310 Foountain St Phila PA 19128

IT hAS Bin ALL MOST 16 Years Since he wAS
FIRST INCARCERATED AND he has LEARNED A lot
OF Good things IN That Time. degrees in
bible AND Business.

I Think he is RehAbITATED AND is READY
To come home AND help his
86 Year old FAther (his mother my wife died
LAST YEAR) out in his SENIOR YEARS

        SINCERELY
        James Hogeland

**EXHIBIT A-11**

Frank Hogeland
639 Jamestown St
Phila, Pa 19128
215-668-6283

To whom it may concern,

My name is Frank Hogeland and I'm writing on behalf of my brother James Hogeland 59573-066 to kindly ask for the consideration of his compassionate release. James has served quite a bit of his unusually harsh sentence and the need for further incarceration is not really warranted. He's had an exceptionally clean prison record and has been a model prisoner at all times. He's furthered his education and renewed his faith.

Prior to his arrest he had a solid work history and marketable skills. He was not a career criminal but someone who got caught up in drug use and obviously made some bad decisions. Now facing the age of 60 and with those things far in the past I'm certain that he would not return to that lifestyle. I'm sure that he would cherish his freedom and be a useful contributing member of society.

It would be a great help to our family if James was able to come home. I'm suffering from a rare form of leukemia/lymphoma and I anticipate some rough times ahead. James would be able to help with the care of our 87yr old father whose health is starting to decline. He could live with our father or me. He is certainly welcome at both homes. Our two siblings live across the country and they have families and it's not easy for them to drop everything and fly back to Philadelphia.

James is loved and missed by his family so I sincerely ask again for you to consider the compassionate release of my brother. Is there any need to keep him incarcerated until he is old and can no longer contribute positively to society? I feel in my heart that he is rehabilitated and will be a valuable asset to not only his family but to his community as well. Please let him come home to us and thank you for considering my plea.

Frank Hogeland

Donna Hogeland Stusser
11141 Cherry Ridge Rd
Sebastopol, California 95472
707-293-3400
dstusser2@comcast.net

To Whom It May Concern,

Thank you for taking the time to read my letter. I have been hoping for the opportunity to help my brother. My name is Donna Hogeland Stusser.
I am the first daughter of Fred and Christine Hogeland of Philadelphia Pa. My brother James Hogeland is the third child, Frank Hogeland, the first
and Debbie Celebucki, the last.
It was our mother's Christine's deepest sorrow that she was not personally able to "get Jimmy back" as she would often say before she died
February 12, 2019. It brought us all so much closer to surround her during those last two weeks of her life. Jimmy called her everyday even while
she was unconscious so she could listen to his voice. He took part in choosing the prayers for her Mass. They were very close, wrote letters regularly
and spoke often on the phone. James is a devoted son. He made the choice to request a transfer from Lewisburg to Fairton even though he knew he
would need to give up some comforts. He did this because the drive would be easier on his aging parents.

There is no doubt it was the right outcome of events to imprison James for his crime in 2004.
I am very grateful for the reform he has made through the Federal Detention System. I have visited him once a year for the last 16 years in prison and
he is truly a changed person.
He is a kind, thoughtful, intelligent, respectful person. He is a loving brother  and a wonderful uncle to my children. He knows how to show up in our
lives even while he is incarcerated. He has always remembered our birthdays and holidays and small details of our lives.

James has taken advantage of many opportunities to grow and learn during his incarceration.
He has done this to improve his life and the lives of those around him. I remember meeting the Chaplin at Lewisburg who thanked me for all the good
James did for other inmates. I never hear a word of complaint from my brother. He apologized repeatedly to us for the mistakes he had made, especially
to our parents. He is ready to start again.

I have no doubt he will be an upstanding member of society. He has always kept a steady job in prison all these years as you see from his records, as
when he maintained the ancient plumbing system at Lewisburg Penitentiary. Currently when we talk he tells me how good he feels to be making masks.
He is a team player.

Now nearly 16 years later, I am asking that he be released and be pardoned and be allowed to return home to our family. I hope he can live with Fred Hogeland,
our father who is 86 as his caretaker. Fred still resides in our family house on Fountain Street where we grew up.

We all want him back. New babies are being born, grandchildren are graduating from college, great grandchildren are graduating from high school, all celebrations
we want "Uncle Jim" to be a part of as well as everyday life.

I ask that you please grant the pardon of James Hogeland as soon as possible.

Please let me know if there is anything else I can do to assist this in happening.
Thank you for your thoughtfulness,

Donna Hogeland Stusser

*Donna Hogeland Stusser*

To whom it may concern,

I am writing on behalf of my brother James Hageland, prisoner # 59573066. He has spent over 11 years in prison during which time he has worked, served others, accepted his sentence, improved himself and has never been reprimanded for his behavior. It is clear to me having known James Hageland for over 50 years that he has grown in maturity, integrity and faith during his time in prison and is ready to make a contribution to society as soon as he is released.

Do to laws and sentencing procedures that are in question even to the law makers that created them, he was given a 50 year sentence for his crime. In July of 2015 and more recently President Obama has commuted sentences of prisoners in similar situations. We are begging for the early release of my brother, James Hageland. He would create a contribution to his family as well as many others when released and is missed and loved by all. Please, please consider him as a candidate for early release. Thank you so much.

Debbie Celebucki,

Hana Stusser
220 17th Ave S
Seattle, WA 98144

To whom it may concern,

I am writing today on behalf of my uncle James Hogeland. My name is Hana Stusser and James is my mom, Donna Hogeland Stusser's younger brother. I am 22 years old and I just graduated from Seattle University in Washington state with a degree in Psychology. Next year I plan to work and apply for graduate school to further pursue my degree in clinical psychology.

For almost my entire life, my uncle Jim has been in prison. However, this has not stopped us from having a relationship or being a part of each other's lives. I visit my uncle as often as I can with my mom and sister. We fly across the country to Pennsylvania to stay with my grandparents and then visit Jimmy in prison. The time we spend together is short because that is all that's allowed, but it's something that means a lot to our family, especially my uncle Jim. My sister and I make an effort to stay in touch between visits, but the real effort comes from my uncle. My uncle Jim has never failed to send me a kind and heartfelt birthday card, Christmas card or Easter card. I think it is safe to say he is the only family member who manages to have the card arrive on the very day of my birthday or the holiday. And I am one of many nieces and nephews, all of whom I assure you receive the same treatment. My uncle is always thinking of his family on the outside and does everything in his power to remind us how much he cares about what's happening in our lives.

I hope that this can give you a little glimpse of the person James is. Being in prison with a sentence like his is something that I think most of us find unimaginable. I certainly do not think that I would be half the person he is today if I were in his shoes. It is because of this that my uncle is one of the strongest people I know.

It is my hope and the hope of our entire family that his case can be re-examined and that he can come home. I want my uncle to be a part of my life beyond prison visits once a year and letters and phone calls. The world needs more people like my Uncle James on the outside of prison walls where I know he will be able to live a meaningful and fulfilling life and inspire those around him to do so as well.

Sincerely,

Hana Stusser

Hana Stusser

Mari Stusser

1259 ½ Stafford St

San Luis Obispo, Ca

To whom it may concern,

My name is Mari Stusser and James Hogeland is my uncle. I am a student at Cal Poly State University in central california and will be entering my second year in the fall.

I am writing to ask that my uncle is pardoned from his sentence.

For as long as I can remember, my Uncle Jim has been in prison. Over the years I have found a lot of joy and meaning in writing letters to him. His responses are always so beautifully written, upbeat, and full of enthusiasm for what I am doing in my life. I have all the letters saved and sometimes read back on them when I want to smile. I never much liked being brought to the humid east coast every summer, but the visits to Uncle Jim began to make them something special. Although entering a federal prison at age 12 was overwhelming for me, when we got to my uncle, I always felt at ease. He made everyone laugh and would bring up little details we had mentioned months earlier to inquire about. Uncle Jim was always sharing jokes and familiar greetings with the inmates next to us. When we got our photo taken I always felt so proud to stand next to him in front of everyone. Despite all odds, he has always had such a composed, strong and bright presence. Our allotted time would fly by and too soon we would watch him be led down the hallway out of the visitors room.

Although I try to write stories and accounts to fill my uncle in, it breaks my heart to think about all the events in our lives so far where he has been missing. It would make all of college worth it to see my uncle in the audience when I graduate, and mean the world for him to attend more big moments in my future. Now that my grandmother has passed away, my Grandpa Fred lives alone, and needs the care of his son more than ever. The quarantine has made it very difficult for him to do much of anything more than stay inside, and I know Jim would bring him a lot of joy in the ending chapter of his life.

I hope from our letters one can gather just how much it would mean to our entire family to have Jim released and back among us. I feel there is so much purpose for him in life beyond prison and I know he would make the world such a brighter place.

I thank you for your time and consideration,

Sincerely,

Mari Stusser

To Whome It May Concern,

I am writing on behalf of my uncle James Hogeland, 59573-066. I think that he has served a long anough sentince in prison and has changed I have never been able to meet him outside of prison or really get to know him. If his sentince was over I could see him outside of prison and he could show me what he likes to do, I have hurd that he owns a cool motercycle. Another big benafit of him being releaced is he could go and help take care of my Grandma and Grandpa as thay get older. I understand that he was guilty in the past and from what I have seen of him he has changed and is a better peson. I think that it is cool how prison has changed him in ways like, he did colige classes and erned a digree.

Sincerely Ashoka, Celebnck:

**EXHIBIT A-17**

**Tinneny Plumbing & Heating Inc.**
404 Fountain Street
Philadelphia, PA 19128
215-487-3113/ Fax: 215-487-3014
License # 10675

I am writing this letter on behalf of James Hogeland for request of possible early parole.

Life can be very challenging and difficult at times, turning down a wrong path in today's world is not uncommon; however I am a practicing Catholic and believe in today's world most people deserve a second chance and in Jimmy case I've feel after speaking with his parents and siblings he has came a long way and truly has repent from his sins.

If in your hearts he would be granted a second chance I would not hesitate to hire him on a full time bases for my plumbing & heating business.
My wife and I have been owner for over 30 years and at one time long ago Jimmy was part of. As for his plumbing skill Jimmy was a complete asset to us.

In closing I totally honor your decision and would honor mine if Jimmy was to be released. Thank you for your time on this manner.

Sincerely,

Carol Tinneny
404 Fountain Street
Philadelphia, PA 19128
215-487-3113
215-487-3014 Fax
carolt@tinnenyplumbing.com

8/17/2016

    I am writing with in reference to James Hogeland. I would like to say that Mr. Hogeland has been a model inmate since his arrival. He has furthered his education. Offer assistance to other inmates when they are having a hard time. As well as offered his knowledge of plumbing and heating to aid in the repairs in the prison. But Mr. Hogeland is much more than all of that to my family. He is more like a brother to me, an Uncle to my children and was, without a doubt, a brother to my recently departed husband. I am personally honored to call Mr. Hogeland my friend because when the chips are down and I am depressed or upset about anything at all; Mr. Hogeland will have some kind of inspirational words to calm me with and I always feel better. He has turned his faith and himself over to God in the last few years and he is very much a different person because of it. The Hogeland Family has been extremely supportive of James because they witnessed the miraculous changes in him and in all honesty deserve to see their sons' freedom become a reality before they leave this earth. Mr. Hogeland would be a credit to society these days and may very well have an effect on some of the negativity in this world. I, like many others, hope and pray every day that we will be able to see Mr. Hogeland as our neighbor again soon.

    Thank you,

*Gina M Clark*

Gina M. Clark
255 Roxborough Ave.

Philadelphia, Pa 19128

(215)303-4133

8-22-16

To whom it may concern,

This letter is with regards to James Wayland. Mr. Wayland is a stand up guy that has come a long way since his arrival there. He has come a long way both spiritually & ethically. His life is being wasted & should be used as an example for others who end up in this type of situation. It is in my hopes that everyone will agree that Mr. Wayland has served enough time to make the necessary changes & release him to help others do the same.

Thank You,

Theresa Flush

625 Dufranc Avenue
Sebastopol, CA  95472

June 11, 2020

James Hogeland
59573-066
Federal Correction Institute
PO Box 420
Fairton, NJ 08320

To Whom it May Concern:

I am a close friend of Donna Hogeland Stusser and her family.  I have known them for 18 years, beginning when our children attended preschool together.  They are a beautiful, hard-working, and caring family.  All of them are devoted to the betterment of society through compassionate education and social services.

Over the years Donna has kept me informed about James' history, his initial incarceration, and his purposeful, steadfast, and committed reform.  They have supported him in his improvement and will continue to love, and assist him in the next phases of his life.  Should James be released, he will not be on his own:  he has a network of loving people to aid him.

From what I have heard, James is a skilled and hard-working man.  He has repented of his wrongs and wants only to be a generous and law-abiding member of society.

Most importantly, he has learned from his mistakes and is ready to rejoin society as an improved citizen.  I fully support his release and pardon.

Thank you for reading this.

Sincerely,

Janine Sternlieb

**EXHIBIT A-21**

June 11, 2020

Spencer Sherman
625 Dufranc Avenue
Sebastopol, CA 95472
707-824-4801

To Whom It May Concern:

I am a close friend of Donna and Michael Stusser and their 2 daughters, Mari and Hana Stusser. I am writing on behalf of James Hogeland, the brother of Donna Stusser.

While I have not met him, I have heard much about him from Mari, Hana, and Donna. They have spoken over the years and, recently, about how transformed a person James has become. They have shared letters and photos which confirm their words that he is dedicated to peace, healing, and service. This is a man who wants to give back and I believe that his release from prison will benefit many.

I have met many people who been freed from prison after being incarcerated for 10 to 30 years (Inside Circle Foundation), and I have been impressed with the maturity and wisdom of these people. James Hogeland strikes me as a similar person; someone who understands how his behavior has caused harm to himself and others and he has healed this part of himself. Today, he is devoted to helping and doing good in the world. And, we need that today.

For the benefit of his family and the people who James will inspire, I encourage you to pardon and release him from prison at the earliest opportunity.

With much respect for all that you do and have done to rehabilitate men like James,

Spencer Sherman

June 10, 2020

Tracy Saucier
8 Queens Lane
Petaluma, CA 94952

To Whom it May Concern:

I am writing on behalf of James Hogeland, the brother of my dear friend and coworker, Donna Hogeland Stusser. I work at Summerfield Waldorf School and Farm, a private school in Santa Rosa, California, as the Admissions Director. I have known Donna for over 14 years, and she is a phenomenal person. Not only is she a distinguished early childhood educator and mentor who worked at our school for over 20 years, she is the first person signing up to help those in need. She is currently planning to open an early childhood center for low income families.

Donna speaks about her brother every time we get together, letting me know how he has transformed his life, and how positive he is even while being in prison for 16 years for non-violent offenses. He has dedicated his life to studying the Seminary Arts, and believes in the power of Divine Love and Mercy, and lives his life out of these values. She is always in admiration of his insights and shares them often. I can see how much she misses her younger brother, and how she feels he is a peaceful and transformed human being whose gifts would greatly benefit their family, his community, and the world.

I too believe in the power and goodness of Mercy, and I hope that the truth of his transformation will allow the wisdom of the court to release James Hogeland so that he may serve his family and community, and fulfill his mission as a citizen and human being.

With great hope,

Tracy Saucier

10 June 2020

To Whom it May Concern,

I am writing on behalf of James Hogeland to encourage those of you who have the authority to consider releasing and pardoning him.

I am a close friend of his sister, Donna Hogeland Stusser, and have heard about "Jimmy" as long as I've known her (over 20 years). What I hear about Jimmy is the way he has embraced his life on the inside through his service to other inmates and his capacity to maintain a steadiness in his prison jobs. And how deeply he has stayed connected to his loved ones on the outside through regular cards, letters, and phone calls. When Donna gets off the phone with Jimmy, she exudes an exuberance that I rarely experience otherwise. He touches and ignites a spark of humanity that then touches me through Donna.

In this moment when we as a society are re-considering the mass incarceration of so many of our people, it seems appropriate to free someone who has turned the page of their life toward service and caring. I hope you will seriously consider James Hogeland's request for pardon.

In the meantime, I also offer gratitude that Jimmy has been given the tools in prison to reflect and make the changes in his life that now make his freedom possible.

Sincerely,

Tara

Tara Brown
P.O. Box 1755
Bodega Bay, CA 94923

EXHIBIT A-24

Katherine Presley
1195 Westside Road
Healdsburg, Ca 95448

June 10, 2020

To whom it may concern,

My name is Katherine Presley. I live in Sonoma County California and from 2007-2014 I lived on the property belonging to Donna Hogeland-Stusser with my husband Michael. Donna and I have known each other and been friends and teaching colleagues for over 25 years. Donna is an extraordinary human being. Articulate, creative, compassionate and generous, a loving daughter, sister, mother and friend. I have always felt lucky and grateful to have her as a friend. My husband and I consider her daughters as practically our own. We have gone through their growing pains and challenges and celebrated their joys and gifts, creativity and accomplishments in awe and appreciation of who they are and are becoming. Largely due to Donna's incredible capacity as a mother and woman, these girls have grown to be remarkable people. I give you this background so you have a context for the rest of what I would like to convey.

You see, I could write much more about Donna, but today I am writing on behalf of her brother James Hogeland who I have never personally met. Yet I feel compelled and honored to take the opportunity to write on his behalf. And I feel as though I do know him. My husband and I spent every Christmas and birthdays with Donna's family. We were often present when a phone call would come from James. We heard and witnessed the girls, his nieces, speaking and listening with love to their uncle. We would hear their stories of their visits with James when they would return from their summer vacations which always included a visit with him. They love their uncle and admire him, his kindness toward, and interest in them. Their care for James and the meaningful relationships they had, and still have, continue to impress me. Donna always spoke lovingly, honestly and practically about James; his mistakes, remorse and then taking responsibility to change and make things right. James' love and faith and Donna's faith, love and support of James, have all been an inspiration to me.

I think James's reform is commendable and worthy of his case being reconsidered. He made terrible errors but found his way to make fundamental changes in himself and make amends in the ways he could, in a very responsible human way. I hope that his efforts are seen by those with the power to grant it, as worthy of his release.

Please feel free to contact me if I can be of further assistance.

Thank you for your consideration,

Katherine Presley

Greetings Your Honor,
I humbly come to you today on behalf of my good friend, brother, encourager and fellow inmate James Hogeland.

I met James at the age of 25, coming from a wild group of men at Big Sandy USP. I was blessed to meet James my first week that I transfered to Lewisburg USP Cadre Program in 2011. Me being a young black man from Baltimore City and James being an older white man from PA we had little in common outside of our faith in Jesus Christ! James accepeted me from the start of my stay in Lewisburg and instantly greeted and cared for me as a brother without boundaries! I grew to know and care for James as a brother who cared for me and taught me a lot! In prison, especially while serving a life sentence, we encounter many hardships and hard days.. In the midst of those hardships its very rare yet important to have someone who you can confide in for wise counsel! James was that guy for me. Always there to not only extend himself to help me but anyone else he could along the way. No matter where they were from or what they look and sound like! He has been very impactful in helping me and many others grow mentally, physically and spiritually. I'm sure, if given the opportunity, he would be impactful in the lives of those in his family and community in the outside world!

James is a man of God and encourages others to strive for change and being better people daily. I humbly ask that you consider that and extend your grace and mercy to him by considering him relief to be able to show his family and community the new man that I have encountered for the last 10 years!

Thanks for your consideration.

Sincerely,

Frank Keith Goodman #43303-037

PPG6

```
   FAIBV  606.00 *     MALE CUSTODY CLASSIFICATION FORM  *   11-12-2020
PAGE 001 OF 001                                                14:37:49
```

### (A) IDENTIFYING DATA

REG NO..: 59573-066            FORM DATE: 03-31-2020        ORG: FAI
NAME....: HOGELAND, JAMES

                              MGTV: NONE

PUB SFTY: SENT LGTH           MVED:

### (B) BASE SCORING

DETAINER: (0) NONE              SEVERITY.......: (3) MODERATE
MOS REL.: 334                   CRIM HIST SCORE: (04) 5 POINTS
ESCAPES.: (0) NONE              VIOLENCE.......: (0) NONE
VOL SURR: (0) N/A               AGE CATEGORY...: (0) 55 AND OVER
EDUC LEV: (0) VERFD HS DEGREE/GED   DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS

### (C) CUSTODY SCORING

TIME SERVED.....: (4) 26-75%    PROG PARTICIPAT: (2) GOOD
LIVING SKILLS...: (2) GOOD      TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE      FAMILY/COMMUN..: (4) GOOD


--- LEVEL AND CUSTODY SUMMARY ---

BASE CUST VARIANCE  SEC TOTAL  SCORED LEV MGMT SEC LEVEL  CUSTODY  CONSIDER
 +7  +20    -4        +3        MEDIUM      N/A              IN     DECREASE


G0005      TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

# Life's Key
## Student Transcript

## James H. Hogeland
59573-066

United States Penitentiary
PO Box 1000
Lewisburg, PA 17837
United States

Units Earned: 40.0
ECS Units Earned: 39.5
Grade Avg: 92

| Code | Pub | Title | Completed | Units | Grade |
|------|-----|-------|-----------|-------|-------|
| | | **Certificates Earned** | | | |
| | | | Mar 29, 2005 | 5.0 | |
| | | | May 24, 2005 | 10.0 | |
| | | | Jul 19, 2005 | 15.0 | |
| | | | Oct 25, 2005 | 20.0 | |
| | | | Dec 28, 2005 | 25.0 | |
| | | | Feb 14, 2006 | 30.0 | |
| | | | Mar 24, 2006 | 36.0 | |
| | | **Courses Completed** | | | |
| BTW | ECS | Born to Win | Nov 16, 2004 | 1.0 | 98 |
| JOS | ECS | Joseph: A Life of Virtue | Jun 14, 2005 | 0.0 | 83 |
| MMM | ECS | Men Who Met the Master | Dec 14, 2004 | 0.5 | 97 |
| WBT | ECS | What the Bible Teaches | Dec 14, 2004 | 1.0 | 86 |
| GMA | ECS | The Greatest Man Alive | Jan 4, 2005 | 0.5 | 100 |
| OGOW | ECS | One God One Way | Jan 4, 2005 | 1.0 | 98 |
| EPI-FNB | EPI | Food for New Believers | Feb 1, 2005 | 0.0 | 95 |
| YCLF | ECS | You Can Live Forever | Feb 1, 2005 | 0.5 | 94 |
| DTWJ | ECS | Doing Time With Jesus | Feb 15, 2005 | 1.0 | 92 |
| JTB | ECS | A Journey Through the Bible | Feb 15, 2005 | 1.0 | 96 |
| GIT | ECS | God Is There | Mar 29, 2005 | 1.0 | 95 |
| LCL | ECS | Lessons for Christian Living | Mar 29, 2005 | 1.0 | 93 |
| GCG | ECS | Guide to Christian Growth | Apr 26, 2005 | 1.0 | 89 |
| ITHR | ECS | I'll Take the High Road | Apr 26, 2005 | 1.0 | 83 |
| GAL | ECS | The Letter to the Galatians | May 24, 2005 | 1.0 | 87 |
| GJ | ECS | The Gospel of John | May 24, 2005 | 2.0 | 96 |
| JAS | ECS | The Letter of James | Jun 14, 2005 | 1.0 | 90 |
| ACTS | ECS | The Book of Acts | Jul 19, 2005 | 1.0 | 92 |
| HSW | ECS | The Holy Spirit at Work | Jul 19, 2005 | 1.0 | 78 |
| 1COR | ECS | The First Letter to the Corinthians | Aug 23, 2005 | 2.0 | 86 |
| LK | ECS | The Gospel of Luke | Sep 13, 2005 | 1.0 | 90 |
| LS | ECS | The Lord's Supper | Oct 11, 2005 | 0.5 | 90 |
| MP | ECS | Messianic Psalms | Oct 11, 2005 | 1.0 | 90 |
| BBB | ECS | Buried by Baptism | Oct 25, 2005 | 0.5 | 95 |
| EPH | ECS | The Letter to the Ephesians | Oct 25, 2005 | 1.0 | 93 |
| LJ | | | Nov 8, 2005 | 0.5 | 97 |
| TT | ECS | Timothy and Titus | Nov 8, 2005 | 1.0 | 92 |
| 2COR | ECS | The Second Letter to the Corinthians | Nov 22, 2005 | 1.0 | 87 |
| MK | ECS | The Gospel of Mark | Dec 6, 2005 | 1.0 | 93 |
| PCP | ECS | Philippians, Colossians, and Philemon | Dec 28, 2005 | 1.0 | 92 |
| MATT | ECS | The Gospel of Matthew | Jan 9, 2006 | 1.0 | 94 |
| BP | ECS | Bible Prophecy | Jan 31, 2006 | 1.0 | 81 |
| DAN | ECS | The Life and Prophecies of Daniel | Jan 31, 2006 | 1.0 | 94 |
| PPPW | ECS | Perfect Person Perfect Work | Feb 14, 2006 | 2.0 | 95 |

printed by mb

EXHIBIT A-27



# Life's Key
## Student Transcript

## James H. Hogeland
59573-066

| Code | Pub | Title | Completed | Units | Grade |
|------|-----|-------|-----------|-------|-------|
| THES | ECS | The Letters to the Thessalonians | Feb 14, 2006 | 2.0 | 89 |
| OTLH | ECS | Old Testament Law & History | Mar 7, 2006 | 2.0 | 94 |
| OTPP | ECS | Old Testament Poetry and Prophecy | Mar 7, 2006 | 2.0 | 96 |
| NTS | ECS | New Testament Survey | Mar 14, 2006 | 2.0 | 96 |
| EPI-SR | EPI | Start of the Race | Mar 14, 2006 | 2.0 | 95 |
| EPI-WOWI | EPI | Way Out and Way In | Apr 18, 2006 | 0.0 | 96 |
| EPI-DJ | EPI | Desert Journey | Apr 18, 2006 | 0.0 | 97 |
| EPI-WAL | EPI | Winning and Losing | Apr 25, 2006 | 0.0 | 96 |
| EPI-KD | EPI | King David | Apr 25, 2006 | 0.0 | 98 |
| EPI-KGD | EPI | Kingdom Divided | May 16, 2006 | 0.0 | 95 |
| EPI-SI | EPI | Songs of Israel | Jun 27, 2006 | 0.0 | 91 |
| TCK | ECS | The Coming King | Jun 20, 2006 | 0.0 | 98 |
| EPI-PROV | EPI | Proverbs | Jul 25, 2006 | 0.0 | 100 |

printed by mb

THE SALVATION ARMY



This is to certify that
James Hogeland
has satisfactorily completed
"The Christian Life"
BIBLE CORRESPONDENCE COURSE
And is hereby award this
CERTIFICATE

November 13, 2009

*G. Niesh*

---

THE SALVATION ARMY

This is to certify that
James Hogeland
has satisfactorily completed
"The Early Church"
BIBLE CORRESPONDENCE COURSE
And is hereby award this
CERTIFICATE

January 12, 2010

*G. Niesh*

EXHIBIT A-29

# AMERICAN BIBLE ACADEMY

Presents this Certificate to

James H. Hogeland

upon successful completion of

Study Course ___The Book of Acts Vol Two___

Awarded the ___11th___ day of ___April___ , ___2007___ .




_Joseph Welch_
ACADEMIC DEAN

_Mrs. Gwen Wadell_
REGISTRAR



**GRADE REPORT**
**AMERICAN BIBLE ACADEMY**
P.O. BOX 1627
JOPLIN, MO 64802-1627

NAME: James H. Hogeland

STUDENT ID#: 253416

COURSE: The Book of Acts Vol Two

DATE: 4/11/07

EXAM 1: 78    EXAM 2: 80    EXAM 3: 88

FINAL GRADE: 82    CREDITS: 1

Grading Policy - The grading system used by A.B.A. is as follows:

| | | | | |
|---|---|---|---|---|
| A+ ....100-99% | A ........98-95% | A- .......94-90% | B+ ......89-87% | B ........86-84% |
| B- .......83-80% | C+ ......79-77% | C ........76-74% | C- .......73-70% | D+ ......69-67% |
| D ........66-64% | D- .......63-60% | F .........59-0% | | |

Please update any changes in your mailing address.
Websites: www.abarc.org • www.arm.org

# AMERICAN BIBLE ACADEMY

Presents this Certificate to

James H. Hogeland

upon successful completion of

Study Course __Galatians & Philippians__

Awarded the ___10th___ day of ___July___ , ___2007___

 

_Joseph Welch_
ACADEMIC DEAN

_Mrs. Gwen Wadell_
REGISTRAR

---

**GRADE REPORT**
**AMERICAN BIBLE ACADEMY**
P.O. BOX 1627
JOPLIN, MO 64802-1627

NAME:    James H. Hogeland          STUDENT ID#: 253416

COURSE:  Galatians & Philippians          DATE: 7/10/07

EXAM 1: 86        EXAM 2: 90        EXAM 3: 76

FINAL GRADE: 84        CREDITS:  1

Grading Policy - The grading system used by A.B.A. is as follows:

A+ ....100-99%    A ........98-95%    A- ........94-90%    B+ ......89-87%    B ........86-84%

B- .......83-80%    C+ ......79-77%    C ........76-74%    C- ......73-70%    D+ ......69-67%

D ........66-64%    D- .......63-60%    F ..........59-0%

Please update any changes in your mailing address.
Websites: www.abarc.org • www.arm.org

# AMERICAN BIBLE ACADEMY

Presents this Certificate to

James H. Hogeland

upon successful completion of

Study Course __Christian Doctrine, Vol. 3__

Awarded the __18th__ day of __October__ , __2016__ .




*Joseph Walsh*
ACADEMIC DEAN

*Mrs. Gwen Wadell*
REGISTRAR



## GRADE REPORT
## AMERICAN BIBLE ACADEMY
P.O. BOX 1627
JOPLIN, MO 64802-1627

NAME:  James H. Hogeland          STUDENT ID#:  253416

COURSE:  Christian Doctrine, Vol. 3          DATE:  10/18/16

EXAM 1:  95     EXAM 2:  94     EXAM 3:  94

FINAL GRADE: 94          CREDITS:  1

Grading Policy - The grading system used by A.B.A. is as follows:

| | | | | |
|---|---|---|---|---|
| A+ ....100-99% | A ........98-95% | A- .......94-90% | B+ ......89-87% | B ........86-84% |
| B- .......83-80% | C+ ......79-77% | C ........76-74% | C- .......73-70% | D+ ......69-67% |
| D ........66-64% | D- .......63-60% | F ..........59-0% | | |

Please update any changes in your mailing address.
Websites: www.abarc.org • www.arm.org

# *The Voice of Prophecy*

WORLDWIDE BIBLE BROADCASTERS

## *Diploma*



*This Certifies that*

### James H. Hogeland

*has completed in a satisfactory manner the 26 lesson*

#### *Discover Bible Course.*

*Issued at Los Angeles, California, on:*

December 12, 2007



_____
BIBLE SCHOOL DIRECTOR

_____
DIRECTOR-SPEAKER

# Vision International College

## and Seminary USA



Upon Recommendation of the Faculty

Has conferred on

### James Hogeland

The Degree of

### Bachelor of Ministry

With all rights, responsibilities, and privileges pertaining thereto.

Given at Zachary, Louisiana, January 14, 2016.

A College of Lighthouse International University

President

Academic Dean

EXHIBIT K

# CHRISTIAN LEADERSHIP UNIVERSITY

## School of Impartation

To the Praise and Glory of God
Be it known that

### James H. Hoogeland

Having satisfactorily completed the requirements of the approved program of study,
and having evidenced Christian maturity and proficient scholarship
is awarded by the Executive Board and Faculty the degree of

## Associate of Biblical Studies

Given from Port Saint Lucie, Florida,
this thirtieth day of December, in the year two thousand-fourteen
together with all the rights and privileges appertaining thereto.

In testimony whereof, the seal of the school and the signatures of officials are hereto affixed.



Academic Dean

President

# INTERNATIONAL SCHOOL of MINISTRY

THIS DOCUMENT CERTIFIES THAT

JAMES HOGELAND

HAS FULFILLED THE REQUIREMENTS OF AN

# ADVANCED DIPLOMA OF BIBLICAL STUDIES

USING THE

**INTERNATIONAL CURRICULUM**

ON THIS 30 DAY OF DECEMBER, 2014

INTERNATIONAL PRESIDENT

INTERNATIONAL DEAN

REGIONAL CENTER DIRECTOR

SCHOOL DIRECTOR



GOOD SHEPHERD MINISTRIES INTERNATIONAL · Ministers to Ministers ·



# INTERNATIONAL SCHOOL of MINISTRY™
## TRANSCRIPT

Student: **James H. Hogeland**
Enrolled: 6/14/2013          Graduation Date: 12/30/2014

### Trimester 1

| | | |
|---|---|---|
| Foundations of the Faith | RS101 | A- |
| Supernatural Living, Part 1 | RS217 | B- |
| New Testament Survey, Part 1 | BI102 | A- |
| Praise and Worship | RS105 | B |
| Supernatural Living, Part 2 | RS217 | A- |
| New Testament Survey, Part 2 | BI102 | A |

### Trimester 2

| | | |
|---|---|---|
| Power of Prayer | RS106 | A |
| Jesus Our Healer Today | RS205 | A |
| Old Testament Survey, Part 1 | BI101 | B+ |
| Essence of the Gospel | BI201 | B- |
| Ministry of Helps | BI208 | C |
| Old Testament Survey, Part 2 | BI101 | B |

### Trimester 3

| | | |
|---|---|---|
| Introduction (Mobilize to Multiply) | ED101 | C- |
| Cell Growth and Principle of 12 | RS216 | A |
| Power Evangelism | RS103 | B- |
| Church Based Training | RS314 | A- |
| Leader's Integrity | RS102 | B- |
| Leadership Vision | RS304 | B+ |
| Church Planting | PC200 | A |
| Being Led by the Spirit | RS204 | B+ |

### Trimester 4

| | | |
|---|---|---|
| Wilderness Mentalities | RS219 | A |
| Developing Leaders | RS111 | C |
| Missions and the Harvest | RS305 | C |
| Personal Evangelism | PC300 | B |
| Spiritual Warfare | RS110 | C |
| Reconciliation | BI302 | A- |
| Cell Group Leaders | RS216 | C- |

### Trimester 5

| | | |
|---|---|---|
| Christ Connection | RS315 | A |
| Living to Give | PC100 | B- |
| Supernatural Faith | RS209 | A |
| Children and Youth Ministries | ED301 | A |
| Biblical Eldership | RS301 | B+ |
| Discipleship | RS219 | C- |

Signed: _____          Date: 6/11/16
                Office of Registrar

Info@isom.org
909.478.3330

# GOOD SHEPHERD MINISTRIES
*International*

P.O. Box 11909
San Bernardino CA 92423





# Official Transcript

**Student:** James Hogeland

**Graduation Date:** 01/14/2016

| Ministry Module | | |
|---|---|---|
| Course Code | Title | Grade |
| F01 | Conquering the Sin Nature | A |
| F02 | The Heart of the Ministry | A |
| F03 | Renewed Like the Eagles | A |
| F04 | Community & Gender | A |
| F05 | Dynamic Preaching | A |
| F06 | Prophetic Foundations | B |
| F07 | Practical Points for Ministry | A |
| F08 | Hearing God's Voice | A |

| Miracle Living Module | | |
|---|---|---|
| Course Code | Title | Grade |
| G01 | New Creation Image | A |
| G02 | Authority of the Believer | B |
| G03 | Praise and Worship | B |
| G04 | Prayer: Bringing Heaven to Earth | A |
| G05 | God's Provision for Healing | A |

| WOW Essential Module – Men & Women | | |
|---|---|---|
| Course Code | Title | Grade |
| W04 | Overcoming Disappointment | B |
| W05 | Rising to Your Potential | B |
| W06 | Divine Healing | B |
| W08 | Ministry of the Holy Spirit | B |
| W09 | Overcoming Grief | B |
| W10 | God's Plan for Your Family | B |
| W11 | Generational Blessing | B |
| W14 | Difficulties in Leadership | B |
| W15 | Women of Worship | C |
| W16 | Become a Minister | C |
| W19 | The Esther Message | C |
| W24 | The Nine Principles of War | C |

| Messenger Module | | |
|---|---|---|
| Course Code | Title | Grade |
| JB01 | Extraordinary | C |
| JB02 | Driven By Eternity | A |
| JB03 | Breaking Intimidation | A |

| Maturity Module | | |
|---|---|---|
| Course Code | Title | Grade |
| M01 | Seven Mountain Strategy | A |
| M02 | Navigating Betrayal | C |
| M03 | Leadership Principles | A |
| M04 | Sexual Wholeness & Healing | A |
| M05 | Confronting Life's Issues | B |
| M06 | The Marriage Trinity | A |
| M07 | The Blessed Life | A |
| M08 | Cleansing Streams | A |

Signature: _____  Date: 6/11/16

# The Foundation Institute

## For Biblical Studies

Be it known that

# James H. Hogeland

Having completed the necessary course of study and
having satisfied all other requirements is hereby awarded the

# Bachelor of Biblical Studies

degree with all the honors and privileges pertaining therein.
In testimony whereof the signatures of the Dean
and the President have been affixed this day.

## September 5, 2013

_Dr. David Helmic Sr._
Dr. David Helmic Sr., President

_Tony Moore_
Bro. Tony Moore, Dean

The Foundation Institute for Biblical Studies

# Student Tracking Record

STUDENT NAME: __James H. Hogeland__        DOC# ___59573-066___

FACILITY: __SMI/USP Lewisburg___        Program Start Date: __02-24-2011__

| Lesson | Course | Start | Completed | Grade |
|---|---|---|---|---|
| | ORIENTATION UNIT | | | |
| 1 | Basic Training For Christian Soldiers | 2–4–11 | 2–11–11 | 96.61 |
| 2 | The Turn | 2–11–11 | 2–14–11 | 92.59 |
| 3 | The Narrow Place | 2–14–11 | 2–19–11 | 97.95 |
| 4 | By Faith Through Faith | 2–19–11 | 2–22–11 | 100 |
| 5 | Iniquity, Sin, And Transgression | 2–22–11 | 2–24–11 | 93.75 |
| 6 | Prescription Drugs & The Spirit | 2–25–11 | 2–27–11 | 98.33 |
| | UNIT 1 | | | |
| 1 | Romans | 2–27–11 | 3–5–11 | 99.47 |
| 2 | Overcoming Sinful Habits | 3–6–11 | 3–9–11 | 96.30 |
| 3 | Complete Salvation | 3–9–11 | 3–15–11 | 100 |
| 4 | Security Guaranteed | 3–16–11 | 3–24–11 | 98.70 |
| 5 | Conquer Discouragement | 3–24–11 | 3–26–11 | 98.96 |
| 6 | When Christians Sin | 3–26–11 | 3–31–11 | 97.77 |
| | UNIT 2 | | | |
| 1 | Bible Doctrine | 3–31–11 | 4–20–11 | 99.15 |
| 2 | Christ's Impeccability | 4–20–11 | 5–7–11 | 92.06 |
| | UNIT 3 | | | |
| 1 | Ephesians | 6–1–11 | | 98.34 |
| 2 | Seven Baptisms | | | 92.15 |
| 3 | Seven Judgments | | | 98.63 |
| 4 | The Second Coming | | | 99.18 |
| 5 | Temptation | | | 100 |
| 6 | Purpose In Trial | | | 100 |
| 7 | Holy Living | | | 94.11 |
| 8 | The Mysteries of God | | 12–1–11 | 98.70 |
| | UNIT 4 | | | |
| 1 | Hebrews | 1–1–12 | 1–12–12 | 95.65 |
| 2 | Scriptural Meditation | 1–12–12 | 1–19–12 | 98.59 |
| 3 | The Spirit World | 1–19–12 | 1–26–12 | 90.96 |
| 4 | Conquer Impure Thoughts | 1–26–12 | 1–28–12 | 95.12 |
| 5 | Knowing God's Will | 1–28–12 | 1–30–12 | 92.30 |
| | UNIT 5 | | | |
| 1 | Philippians | 1–30–12 | 2–10–12 | 99.07 |
| 2 | Dispensational Salvation | 2–10–12 | 2–19–12 | 95.72 |
| 3 | Backsliding | 2–19–12 | 2–23–12 | 94.23 |
| 4 | Separation | 2–23–12 | 2–25–12 | 94.28 |
| 5 | Soul Sleep | 2–25–12 | 2–28–12 | 100 |
| 6 | Preaching Techniques 1 | 2–28–12 | 3–19–12 | 98.14 |

| Lesson | Course | Start | Completed | Grade |
|---|---|---|---|---|
| | **UNIT 6** | | | |
| 1 | Galatians | 3–20–12 | 4–4–12 | 95.78 |
| 2 | Sins unto Death | 4–5–12 | 4–28–12 | 100 |
| 3 | The Fear of the Lord | 4–29–12 | 5–1–12 | 94.44 |
| 4 | Time of the Crucifixion | 5–2–12 | 5–7–12 | 90.47 |
| 5 | Doubtful Disputations | 5–10–12 | 5–30–12 | 98.38 |
| 6 | Hindrances to Prayer | 5–30–12 | 6–4–12 | 96.55 |
| 7 | The Home | 6–5–12 | 6–26–12 | 97.54 |
| | **UNIT 7** | | | |
| 1 | 1 Peter | 6–27–12 | 7–18–12 | 95.05 |
| 2 | Genuine Love | 7–19–12 | 7–21–12 | 94.59 |
| 3 | Christian Principles of Finance | 7–22–12 | 8–9–12 | 95.71 |
| 4 | Preaching Techniques 2 | 8–10–12 | 8–14–12 | 95.33 |
| | **UNIT 8** | | | |
| 1 | Spiritual Fruit | 8–15–12 | 8–18–12 | 92.42 |
| 2 | Holiness | 8–19–12 | 8–23–12 | 98.03 |
| 3 | The Controlled Life | 8–24–12 | 8–26–12 | 96.55 |
| 4 | Personal Devotions | 8–27–12 | 8–29–12 | 96.55 |
| 5 | Sources of Tension | 8–30–12 | 9–1–12 | 96.00 |
| 6 | James | 9–1–12 | 9–22–12 | 96.67 |
| | **UNIT 9** | | | |
| 1 | Bible & Science | 9–23–12 | 9–27–12 | 100 |
| 2 | Place of the Dead | 9–27–12 | 10–3–12 | 94.85 |
| 3 | Christian Relationship to the Law | 10–4–12 | 10–8–12 | 89.32 |
| 4 | Confession | 10–9–12 | 10–15–12 | 93.27 |
| 5 | Church Conflicts | 10–15–12 | 10–22–12 | 89.10 |
| 6 | Christian Principles of Health | 10–22–12 | 10–31–12 | 96.56 |
| | **UNIT 10** | | | |
| 1 | Mark | 11–1–12 | 11–20–12 | 95.78 |
| 2 | 2 Peter | 11–21–12 | 12–6–12 | 97.47 |
| | **UNIT 11** | | | |
| 1 | Creation Week | 1–14–13 | 1–25–13 | 94.24 |
| 2 | The Five Offerings | 1–25–13 | 1–28–13 | 98.70 |
| 3 | The Feasts | 1–28–13 | 1–30–13 | 94.00 |
| 4 | Divorce & Remarriage | 2–1–13 | 2–3–13 | 93.54 |
| 5 | Balanced Christian Growth | 2–3–13 | 2–5–13 | 90.90 |
| | **UNIT 12** | | | |
| 1 | 1 Corinthians Part 1 | 12–7–12 | 12–31–12 | 95.85 |
| 2 | Failure in the Christian Life | 1–1–13 | 1–13–13 | 93.58 |

I certify the above to be an honest and accurate record of this students work:

Chaplain J. Davis
_Signature_

**Chaplain**
Title, Rank or Position

2/7/13
Date

Once all work is completed, mail to: The Foundation Institute For Biblical Studies. Please remember, in all cases, grades must be received by The Foundation Institute before any degrees can be granted.

The Foundation Institute for Biblical Studies

# Advanced Student Tracking Record (Bachelor)

STUDENT NAME: __James H. Hogeland__     DOC# __59573–066__

FACILITY: __SMI/USP Lewisburg__     Program Start Date: __2–24–11__

| Lesson | Course | Start | Completed | Grade |
|--------|--------|-------|-----------|-------|
| | **UNIT 13** | | | |
| 1 | First, Second and Third John | 2–4–13 | 2–17–13 | 96.15 |
| 2 | Music Evaluation | 2–17–13 | 2–20–13 | 99.65 |
| 3 | The Psalms | 2–20–13 | 2–24–13 | 98.98 |
| 4 | Biblical Separation | 2–24–13 | 2–28–13 | 97.77 |
| | | | | |
| | **UNIT 14** | | | |
| 1 | Jack Hyles on Justice | 3–01–13 | 3–06–13 | 98.53 |
| 2 | Understanding Adversity | 3–05–13 | 3–08–13 | 95.45 |
| 3 | The Holy Spirit | 3–08–13 | 3–16–13 | 96.96 |
| 4 | God's Fast | 3–17–13 | 3–19–13 | 96.00 |
| 5 | The Ten Commandments | 3–19–13 | 3–21–13 | 99.56 |
| | | | | |
| | **UNIT 15** | | | |
| 1 | Teaching on Preaching | 3–22–13 | 3–25–13 | 100 |
| 2 | Standing in the Gap | 3–25–13 | 4–7–13 | 98.80 |
| | | | | |
| | **UNIT 16** | | | |
| 1 | Systematic Theology | 4–8–13 | 4–17–13 | 99.52 |

I certify the above to be an honest and accurate record of this students work:

_Chaplain J. Davis_     _Chaplain_     4/19/13
Signature     Title, Rank or Position     Date

Mail to:     The Foundation Institute
For Biblical Studies
7873 Meadow Ridge Lane
Olive Branch, MS 38654

Please remember, in all cases, grades must be received by The Foundation Institute
before any degrees can be granted.



info@isom.org
909.478.3330

# GOOD SHEPHERD MINISTRIES

EXHIBIT A-33

April 13, 2021.

To whom it may concern:

Our organization Good Shepherd Ministries International (GSMI) would like to inform you that our ISOM program, a discipleship and leadership Christian ministry training tool, has been implemented at FCI Fairton, NJ for several years.

Mr. James Hogeland has been part of our alumni since 2014 when he graduated from our Associates program. He continued his studies with ISOM obtaining a Bachelor's Degree in Ministry from Vision International University in 2016. Since then, he became a facilitator of our program helping other Christians to grow in their faith. In addition, Mr. James Hogeland has been teaching 2 classes of 6 and 8 students within the Associates level at his facility.

We can only say that Mr. James Hogeland is a great asset to the Body of Christ and the Kingdom of God by helping other Christians mature in their faith. We believe that many will follow his godly example and achieve significant goals that would help them in their future.

We are grateful for your attention to this letter.
Thank you for your time.

Sincerely,

Dr. Berin Gilfillan,
**Founder and President**
**Good Shepherd Ministries International**

**EXHIBIT A-34**

BP-S576.052   **MONETARY SPECIAL AWARD RECOMMENDATION -**
DEC 95
**U.S. DEPARTMENT OF JUSTICE**                                    FEDERAL BUREAU OF PRISONS

| Institution<br>FDC Philadelphia | Unit<br>7-South | Date<br>7-17-07 |
|---|---|---|
| Inmate's Name<br>Hogeland, James | Register No.<br>59573-066 | Work Assignment<br>Inmate Companion-Psych. |

Recommend Monetary Special Award in the amount of $ 100.00
   In recognition of the following special act:

- ☐ An act of heroism.
- ☐ Voluntary acceptance and satisfactory performance of an unusually hazardous assignment.
- X An act which protects the lives of employees or inmates, or the property of the United States.
- ☐ Suggestions which result in substantial improvements or cost-savings in institutional programs or operations.
- ☐ Other exceptionally meritorious or outstanding services.

Justification: Mr. Hogeland volunteered his professional Plumbing skills to assist Fac. Dep't. With suicide/psych. Obs. Room conversion from porcelain to Stainless Steel combination units. This is to reduce the chance of a suicide in these rooms.

Submitted by

| Printed Name and Signature<br>Robert F. Michael | Title<br>Maintenance Worker Sup'v. |
|---|---|

Approved by

| Department Head<br>Timothy P. Kavelak - Facilities Manager | Date<br>7-18-07 |
|---|---|
| Chief Executive Officer | 7-19-07 |
| Regional Director (Awards Exceeding $150.00) | |
| Award Date | Approved Award Amount<br>$ |

(This form may be replicated via WP)





EXHIBIT F

# Certificate

of

# Completion

# James Hogeland

has completed 4.0 hours of initial training Inmate Companion Suicide Watch Team

of FDC Philadelphia

on Monday, March 26, 2007.

qualifying him to become a member of the

_Dana P. Reinhold, PhD_

Dana P Reinhold, Ph.D.
Psychologist
Mental Health Unit Psychological Team
Coordinator, SEU Inmate Companion Team



# Certificate

of

## Completion

# James Hogeland

has completed 4.0 hours of refresher training
qualifying him to continue as a member
of the Inmate Companion Suicide Watch Team
of FDC Philadelphia on Thursday, September 20, 2007.

_Dana P Reinhold_

Dana P Reinhold, Ph.D.
Mental Health Unit Psychologist
Coordinator, SEU Inmate Suicide Watch Companion Team

EXHIBIT F

EXHIBIT A-36



**U.S. Dep**~~artment of Justice~~
Federal Bureau of Prisons

*United States Penitentiary*
*2400 Robert F. Miller Drive*
*P. O. Box 1000*
*Lewisburg, PA 17837*

---

DATE:       September 20, 2016

TO:         All Concerned

FROM:       J. Sage, Psy.D., Chief Psychologist

SUBJECT:    Suicide Watch Companion Team

This is to advise that Inmate James Hogeland, Reg. No. 59573-066, is a member in good standing of the Psychology Services Suicide Watch Companion Team. This team is comprised of 31 inmates who have offered their time to provide visual supervision of inmates placed on suicide watch within the institution and to respond to potentially life-threatening emergencies.

Participation on the team requires demonstration of superior institutional adjustment determined through a screening process by both unit team and custody staff.  Following this initial screening, applicants are interviewed by the Chief Psychologist and the final selections are based upon the demonstration of maturity, responsibility and commitment to the well-being of fellow inmates.

Each team member is assigned to one or more four-hour shifts and agrees to be available, without prior notice, at the time a suicide watch is commenced.  They participate in a four-hour initial training and agree to quarterly refresher training thereafter.

Please consider the above participation when reviewing this inmate's programming status.


cc: Central File

**EXHIBIT A-37**



U.S. Department of Justice

Federal Bureau of Prisons

---

*Office of the Director*                    *Washington, DC 20534*

Dear Suicide Watch and Mental Health Inmate Companions;

Of the many valuable inmate programs offered by the Bureau of Prisons, the Inmate Companion Program is one of which I am particularly proud. This program is an example of inmates helping inmates. Those of you who participate in this program are contributing to your community by providing support and hope to your peers.

At the same time you are assisting others, you are learning new skills that will support reentry to your communities and reunification with your families. These skills include listening to others, communicating clearly, putting another's needs before your own, and sticking with a job, even when it is challenging; these skills will pay dividends for the rest of your life.

I have great respect and appreciation for the work you do to prevent suicide and support your peers through their darkest moments. Your work, in collaboration with the professional mental health services provided by the Bureau, truly has the power to save lives.

Sincerely,

Charles E. Samuels, Jr.
Director

**EXHIBIT A-38**

| Register Number: | 59573-066 | | | | |
|---|---|---|---|---|---|
| Inmate Name: | HOGELAND, James | | | | |

| MALE RISK ITEM SCORING | CATEGORY | SCORE | Score | SCORE | Score |
|---|---|---|---|---|---|
| 1. Current Age | >60 | 0 | | 0 | |
| | 51-60 | 7 | | 4 | |
| Click on gray dropdown box to select, then click on | 41-50 | 14 | 7 | 8 | 4 |
| dropdown arrow | 30-40 | 21 | | 12 | |
| | 26-29 | 28 | | 16 | |
| | < 26 | 35 | | 20 | |
| 2. Walsh w/Conviction | No | 0 | 0 | 0 | 0 |
| | Yes | 1 | | 0 | |
| 3. Violent Offense (PATTERN) | No | 0 | 0 | 0 | 0 |
| | Yes | 5 | | 5 | |
| 4. Criminal History Points | 0 – 1 Points | 0 | | 0 | |
| | 2 – 3 Points | 8 | | 4 | |
| | 4 – 6 Points | 16 | 16 | 8 | 8 |
| | 7 – 9 Points | 24 | | 12 | |
| | 10 – 12 Points | 32 | | 16 | |
| | > 12 Points | 40 | | 20 | |
| 5. History of Escapes | None | 0 | | 0 | |
| | > 10 Years Minor | 2 | 0 | 1 | 0 |
| | 5 – 10 Years Minor | 4 | | 2 | |
| | < 5 Years Minor/Any Serious | 6 | | 3 | |
| 6. History of Violence | None | 0 | | 0 | |
| | > 10 Years Minor | 1 | | 1 | |
| | > 15 Years Serious | 2 | | 2 | |
| | 5 – 10 Years Minor | 3 | 0 | 3 | 0 |
| | 10 – 15 Years Serious | 4 | | 4 | |
| | < 5 Years Minor | 5 | | 5 | |
| | 5 – 10 Years Serious | 6 | | 6 | |
| | < 5 Years Serious | 7 | | 7 | |
| 7. Education Score | Not Enrolled | 0 | | 0 | |
| | Enrolled in GED | -2 | -4 | -1 | -2 |
| | HS Degree / GED | -4 | | -2 | |
| 8. Drug Program Status | No DAP Completed | 0 | | 0 | |
| | NRDAP Complete | -3 | -9 | -1 | -3 |
| | RDAP Complete | -6 | | -2 | |
| | No Need | -9 | | -3 | |
| 9. All Incident Reports (120 months) | 0 | 0 | | 0 | |
| | 1 | 1 | 0 | 1 | 0 |
| | 2 | 2 | | 2 | |
| | > 2 | 3 | | 3 | |
| 10. Serious Incident Reports (120 months) | 0 | 0 | | 0 | |
| | 1 | 2 | 0 | 2 | 0 |
| | 2 | 4 | | 4 | |
| | > 2 | 6 | | 6 | |
| 11. Time Since Last Incident Report | 12+ months or no incidents | 0 | | 0 | |
| | 7-12 months | 2 | 0 | 1 | 0 |
| | 3-6 months | 4 | | 2 | |
| | <3 | 6 | | 3 | |
| 12. Time Since Last Serious Incident Report | 12+ months or no incidents | 0 | | 0 | |
| | 7-12 months | 1 | 0 | 2 | 0 |
| | 3-6 months | 2 | | 4 | |
| | <3 | 3 | | 6 | |
| 13. FRP Refuse | NO | 0 | 0 | 0 | 0 |
| | YES | 1 | | 1 | |
| 14. Programs Completed | 0 | 0 | | 0 | |
| | 1 | -2 | | -1 | |
| | 2 – 3 | -4 | -8 | -2 | -4 |
| | 4 – 10 | -6 | | -3 | |
| | > 10 | -8 | | -4 | |
| 15. Work Programs | 0 Programs | 0 | | 0 | |
| | 1 Program | -1 | -1 | -1 | -1 |
| | >1 Program | -2 | | -2 | |
| Total Score (Sum of Columns) | | General: | 1 | Violent: | 2 |
| General/Violent Risk Levels | | General: | Minimum | Violent: | Minimum |
| OVERALL MALE PATTERN RISK LEVEL | | | Minimum | | |

Honorable Judge Paul Diamond

I thank God that I am before you once again,and I pray that the impact that you have made in my life comes across in this letter/motion.I know that ultimately the only thing I can do to change the past is to continue to work on positive changes for the future.

I realize the destructive nature of my actions and am remorseful and repentant of them.How the reprocussions of them affected more people than I ever imagined.How selfish,immature,and unthoughtful they truly were.

I have accepted and impart a completely different way of thinking and living now, and refuse to allow anything different for myself and others in my life.I believe all this has been a training ground as I see what is going on in the city I love and also in the world.We are in 'Dire Straights'and serious changes need to be addressed.

My intentions are to continue to try to touch lives in the midst of lifes adversities, wherever that may be.I am wholeheartedly thankful for any and all concideration that I may receive and welcome whatever Your Honor decides.

Respectfully

James Hogeland

*James Hogeland*



FOREVER / USA (×18 stamps)

# PRIORITY MAIL 1-DAY®



0 Lb 13.? Oz

EXPECTED DELIVERY DAY: 07/03/21

C019

SHIP
TO:
601 MARKET ST
Philadelphia PA 19106-1729

## USPS TRACKING® #



9505 5149 8576 1183 2030 97

- USPS TRACKING™ included to many major international destinations.
- Limited international insurance.
- Pick up available.*
- Order supplies online.*
- When used internationally, a customs declaration label may be required.

* Domestic only



P S 0 0 0 0 1 0 0 0 0 1 4

EP14F Oct 2018
OD: 12 1/2 x 9 1/2

U.S.M.S.
X-RAY

**UNITED STATES POSTAL SERVICE®**

USPS TRACKING #

9114 9023 0722 4758 8859 37

Label 400 Jan. 2013
7690-16-000-7848

To schedule free
Package Pickup,
scan the QR code.



USPS.COM/PICKUP

**FROM:**
James Hogeland 59573-066
FEDERAL CORRECTION INSTITUTE
P.O. BOX 420 FAIRTON, N.J.
08320

**TO:**
CLERK of COURT
U.S. DISTRICT COURT
601 MARKET ST.
EASTERN DISTRICT of PA.
PHILA. PA. 19106

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service; October 2018; All rights reserved.

* Domestic only.   * For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.